**STATE of Tennessee, Appellee,**

v.

**Larry SANDERS, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Nov. 1, 1984.

Permission to Appeal Denied by the Supreme Court March 4, 1985.

W.J. Michael Cody, Atty. Gen., William Barry Wood, Asst. Atty. Gen., Nashville, Edgar A. Peterson, IV, Asst. Dist. Atty. Gen., Memphis, for appellee.

William Bullock (Trial), Walker Gwinn (Appeal), Asst. Shelby County Public Defenders, Memphis, for appellant.

## OPINION

WALKER, Presiding Judge.

On his trial for aggravated rape, the jury found the defendant, Larry Sanders, guilty of that offense and fixed his punishment at 99 years in the penitentiary. In the bifurcated trial, it then found him guilty of being an habitual criminal and the trial judge sentenced him to life imprisonment.

■ The defendant first challenges the sufficiency of the evidence to sustain the conviction.

The state's evidence, which the jury accredited, showed that early in April 1982, Kimberly Farmer, a five-year-old girl, went to a store to buy some candy. On leaving the store, a man, whom she identified as the defendant, took her behind the store, pulled her panties down and had inter-course with her. He threatened to "get" her if she told anyone. She said that she did not tell her Aunt Blanche or her mother because she was afraid of being whipped.

Blood was on Kimberly's underclothes and she placed them in the dirty clothes at her aunt's home. The aunt found them on April 12 and called the girl's mother. Kimberly first told her aunt she had scratched herself. The mother took Kimberly to Le Bonheur Medical Center where a physician found that she had been assaulted. At the hospital she told her mother and a social worker that a man named Larry did it. Later the mother and father saw the defendant who agreed to go to Kimberly's school to see if she could identify him. There she identified the defendant as the Larry involved.

The defendant did not testify. He offered alibi testimony to show that at the time in question he was at the home of Mrs. Virginia Winfrey, his godmother. She testified that he had just been released from the hospital and was taking medication that made him sleepy. Sanders also presented evidence that Kimberly shook her head from side to side (in the negative) at the school when her mother asked if Larry did it.

Based on the evidence before the jury, any rational trier of fact could have found the defendant guilty of aggravated rape beyond a reasonable doubt. The evidentiary tests of T.R.A.P., 13(e), and *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), are satisfied by the proof in this case.

The defendant insists that the trial court erred in finding that the girl, seven years old at trial, was competent to testify.

■ The determination of a child's competency to testify is within the trial court's discretion and his determination will not be reversed absent an abuse of discretion. *State v. Braggs,* 604 S.W.2d 883 (Tenn.Cr.App.1980). In light of the child's testimony concerning truth and falsity, we can find no abuse of discretion in the action

of the trial judge in finding sufficient competency to testify.

■ We find no error in the trial judge permitting the girl's mother, father and aunt to testify as to the statements of the details of the offense. These statements were made during the several days after the discovery of the bloody underpants. The evidence shows that the child was at first reluctant to tell her aunt or parents of these events, because she thought she had done something wrong and feared a whipping. Where the injured female is examined as a witness, on a trial of a charge of rape, her statements of the circumstances or particulars of the complaint made soon after the commission of the offense, are admissible as corroborative or confirmatory of her credibility. *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (1963). These statements were admissible under the fresh complaint exception to the hearsay rule. *Morris v. State*, 532 S.W.2d 61 (Tenn.Cr.App.1975). We note that Tennessee goes farther than most states by allowing proof of the details stated by the victim. D. Paine, *Tennessee Law of Evidence*, § 220.

■ The state submits without recommendation the defendant's complaint that the trial judge erred by entering judgment on the habitual criminal conviction that the defendant "shall not be eligible for parole." We agree with the defendant that this was error. T.C.A. 40–28–116(b)(1) clearly provides for granting of parole for one sentenced as an habitual criminal.

Although we have found that the testimony presented to the jury and considered by it was sufficient to support the verdict, we find merit in the defendant's issue that the trial judge committed reversible error under the facts of this case by refusing to permit the defendant to stand before the jury to show his height.

The identity of the defendant was the critical issue in the case. His conviction was based on the sole identification of the girl, five years old at the time of the offense. His identification by her was in sharp dispute. Kimberly said that the man who assaulted her did not have a beard; other evidence, including his photograph at arrest, showed that he had a beard.

Kimberly testified that her assailant was about the height of her mother. At that time in the trial, out of the presence of the jury, the record shows this colloquy:

"MR. BULLOCK: Your Honor, I'm going to ask Mr. Sanders to stand up.

MR. PETERSON: The State would object unless he wants to testify.

MR. BULLOCK: That's why I'm up here. And the reason that I would do it is because, Your Honor, identity is an issue now. This girl has said that the person that did this was about her mother's height. I went over this with her last week. And her mother's about five feet and will testify, probably next. I'm approximately six feet. She says he was not my height. And Mr. Sanders is about my height. It's a critical issue in the case.

THE COURT: I'll overrule it. I'm not going to allow it."

Kimberly's mother testified that she was five feet, one inch in height.

■ It is generally recognized that a defendant may be required to exhibit himself in any manner which an ordinary person is commonly seen in public, and a defendant's constitutional privilege against self-incrimination is not violated by compelling the defendant to stand up for the purposes of identification. 21 Am.Jur.2d, Criminal Law, § 945; Underhill's Criminal Evidence, 5th Ed., 1978 Supp., § 360.

In Tennessee our appellate courts have frequently held that a nontestifying defendant may be required to stand up before the jury and present certain views of himself. *Black v. State*, 479 S.W.2d 656 (Tenn. Cr.App.1972); *State v. Henderson*, 623 S.W.2d 638 (Tenn.Cr.App.1981). In *Bass v. State*, 191 Tenn. 259, 231 S.W.2d 707 (1950), our supreme court held that there was no doubt that a defendant who had already testified could be forced to stand in the courtroom for better identification and

cited with approval a number of cases from other states that this may be required even though he did not testify.

 With our courts' view that requiring a defendant to stand up before the jury does not involve taking testimonial evidence, we think that a defendant is entitled to stand up before it regardless of whether or not he plans to testify. Unless Sanders stood up, the jury would have no way of knowing whether his height was substantially that of the offender described by the girl.

It was error not to permit Sanders to stand up before the jury. Under the facts of this case, we cannot hold that it was harmless. The case therefore must be reversed and remanded for a new trial.

DUNCAN and BYERS, JJ., concur.