Donnie TARPLEY, a/k/a Donald Topley, Petitioner–Appellant,

v.

Richard L. DUGGER, Respondent–Appellee.

No. 86–5678.

United States Court of Appeals, Eleventh Circuit.

March 28, 1988.

Calianne P. Lantz (court-appointed), Miami, Fla., for petitioner-appellant.

Robert S. Jaegers, Asst. Atty. Gen., Dept. of Legal Affairs, W. Palm Beach, Fla., for respondent-appellee.

Before RONEY, Chief Judge, KRAVITCH, Circuit Judge, and HENDERSON, Senior Circuit Judge.

HENDERSON, Senior Circuit Judge:

Donnie Tarpley, also known as Donald Topley, appeals from a final order entered

by the United States District Court for the Southern District of Florida denying his petition for a writ of habeas corpus. We affirm.

On December 14, 1980, Gay's Jewelry and Gifts in Stuart, Florida was burglarized. Police officers saw Tarpley's car in the vicinity of the burglary and a high speed chase ensued to the Martin County line. There, Tarpley's car was stopped. A witness told the officers that she saw two males exit the car and run into the woods. Tarpley and a cohort were eventually apprehended. Several of the stolen items were found in the trunk of Tarpley's car, including a display case with his fingerprints on it.

Tarpley was charged in the Circuit Court of the Nineteenth District in and for Martin County, Florida with burglary of a structure (Count I), grand theft (Count II) and criminal mischief causing damage over $1,000 (Count III). A jury trial resulted in Tarpley's conviction on all three counts. The state trial court determined that Tarpley was a habitual offender and sentenced him to ten years' imprisonment on Count I, fifteen years' imprisonment on Count II and ten years' imprisonment on Count III.

Tarpley appealed his conviction to the District Court of Appeal of Florida, Fourth District, alleging as error (1) that he was compelled to appear before the jury in jail garb throughout his trial, thereby depriving him of his rights to a fair trial and to equal protection and (2) that the trial court erred in not granting a mistrial because of certain remarks made by the prosecutor during his closing argument. The appellate court found no merit to Tarpley's second ground of error but remanded the case to the trial court for an evidentiary hearing to determine whether Tarpley could have obtained suitable clothing for trial. *Topley v. State*, 416 So.2d 1158 (Fla. 4th DCA 1982).

Following an evidentiary hearing, the state trial court concluded that Tarpley had not been compelled by the State to wear prison garb because he could have obtained suitable clothing to wear at his trial. The Fourth District Court of Appeal affirmed

this judgment. *Topley v. State*, 424 So.2d 81 (Fla. 4th DCA 1983).

On April 13, 1984, Tarpley filed a petition for post-conviction relief in the state trial court pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure alleging that his sentence for the offense of criminal mischief violated the Double Jeopardy Clause. The trial court denied this petition and the appellate court *per curiam* affirmed the denial. *Tarpley v. State*, 475 So.2d 710 (Fla. 4th DCA 1985).

On February 19, 1986, Tarpley filed this petition for writ of habeas corpus in the United States District Court for the Southern District of Florida, raising the three grounds previously considered and rejected by the state courts. On July 11, 1986, the United States Magistrate filed a report and recommendation with the district court recommending denial of the petition. On July 25, 1986, the district court entered an order denying Tarpley's petition. This appeal followed.

■ Tarpley urges that his rights to a fair trial and equal protection, as guaranteed by the Fourteenth Amendment, were violated because he was compelled to appear before the jury in jail attire. Tarpley's own clothes were seized as evidence when he arrived at the Martin County jail. At that time, he was issued the regulation green-grey prison jumpsuit that he wore throughout his trial.

Tarpley's counsel, an assistant public defender, filed a pretrial motion requesting funds with which to purchase clothes for Tarpley to wear at the trial. The trial judge denied the motion but offered Tarpley time to seek civilian clothes from friends, family, a social agency or any other source. This motion was renewed on the day the trial commenced but once again was denied. The judge offered to give a curative instruction to the jury relative to the presumption of innocence and the necessity that no inference be made from his clothing. However, no curative instruction was requested or given.

It is beyond peradventure that a state cannot, consistent with the accused's right

to a fair trial as secured by the Fourteenth Amendment, compel a defendant to stand trial before a jury in identifiable prison attire. *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). To do so may impinge upon the accused's presumption of innocence and, therefore, constitute a violation of his constitutional right to due process. *See Estelle*, 425 U.S. at 503, 96 S.Ct. at 1692 ("The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice.").

■ This does not mean, however, that the Constitution is violated every time a criminal defendant appears before a jury in prison clothes. The facet of such an occurrence which is condemned by the Constitution is the element of compulsion by the state. As the *Estelle* Court explained, "[t]he reason for this judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments.... [I]t is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." 425 U.S. at 507–08, 96 S.Ct. at 1695.

It is undisputed that the State seized Tarpley's clothing as evidence upon his arrival at the jail. Additionally, at the evidentiary hearing, Tarpley's common law wife testified that she attempted to bring her husband some civilian clothes "in December," approximately "a week after he came to jail," but was told that she could not deliver them. Nonetheless, there is no evidence in the record that she made a second attempt to bring clothes to him during the approximately four months that elapsed between the time Tarpley was arrested and the time his trial began. Furthermore, although the trial judge refused to remove Tarpley's case from the docket and denied the motion for funds with which to purchase clothes, it is undisputed that he offered Tarpley time to procure civilian clothing and suggested that he try contacting certain local agencies that might provide clothing for him. Evidence was produced at the evidentiary hearing that several local agencies would, in fact, have furnished him clothes upon request. However, there is no evidence that Tarpley made any attempt to secure clothes from any of these agencies. In short, a review of the record leads us to conclude that there is substantial competent evidence to support the trial judge's finding that the State of Florida did not compel Tarpley to proceed to trial in prison garb.

■ Tarpley next argues that certain comments made by the prosecutor deprived him of his right to a fair trial in contravention of the Fourteenth Amendment and that the trial court erred when it denied his motion for mistrial. Without condoning these statements, we find no constitutional error.

During his closing argument, the prosecutor told the jury:

> You know, Mr. Maslanik has spoken now for in excess of 30 minutes. I think it's very important for you to remember this that in this 30 minutes of addressing his case to you of talking about why his client should be set free, not once did he refer to, did he touch, did he pick up or talk about anyone of the 30 some odd exhibits here which proves this man guilty.
>
> You know, this is where the case is gonna be decided ladies and gentlemen. Keeps saying the state is gonna prove this and the state is gonna prove that. The state can't prove a thing. The evidence either proves or disproves the case. I wasn't there Mr. Maslanik wasn't there and you weren't there. All any of us can rely on is the evidence. And yet for 30 minutes he doesn't talk about the evidence. Isn't that interesting? What does that tell you about his theory of the case? What does that tell you about how low or how far he will go to make you think that we don't have enough evidence?

MR. MASLANIK: I object to the prosecutor's remark about how low I would go. It's highly inflammatory. It's a personal attack, and I'd make an objec-

362

tion to that and move for mistrial, your honor.

THE COURT: The objection is sustained. The motion for mistrial is denied. Ladies and gentlemen, you will disregard this comment in your deliberation. You may proceed, sir.

At that point, the prosecutor stated:

I apologize for that remark if it offended anyone, but again, Mr. Maslanik spent 30 minutes talking about the state as though we are trying to have a conspiracy here among our officers, among our witnesses, to perpetrate a fraud upon you. And there's no evidence of that. And any remark that he might make pertaining to that are simply not true. And if you wish to believe that, if you wish to believe that in fact there is some conspiracy between the victim Mrs. Whiteside, and the Detective Johnson, and Deputy Prim, etc., well, we can't stop you from that then. And you will have to let the person go because if a conspiracy is proven here, then of course it's illegal and it's wrong.

But that again tells you more about their theory of the case is than what the evidence will show. Let's examine the evidence a little bit more.

Mr. Maslanik says the key issue is identity but he doesn't talk about identity. He doesn't tell you that isn't it an amazing coincidence that his client was found in direct vicinity of where this car was abandoned. The car which contained over $52,000 worth of jewelry from Mrs. Whiteside's store. That's an amazing coincidence isn't it? We don't talk about that though, that's not the theory of the case. We don't talk about the fact that when you get into the jury room and look at this document because again the evidence is going to convict that man I'm not and you're not. When you look at this you're gonna see that that car and that license plate that was identified by Patrolman Whittey and Florida Department of Registration here tells you that car belonged to his client. Now, isn't that a coincidence, coincidence

that his car was found near him in Palm Beach County. We don't talk about that either.

We don't talk about the fact that the prints were found and not just his prints but the other person, the other suspect in the case also his prints were found in the case Mr. Mansfield. Perhaps they both went in at some other time and touched the case and the case just happened to be found in their trunk along with $52,000 of jewelry. It's coincidence.

I think it begs our intelligence to ask you to accept a theory of the case that the police somehow mysteriously conspiratorily lifted fingerprints and placed them on this glass. Unbelievable. There's not a shred of evidence of that.

When Mr. Maslanik throws these out to you, if he had hard evidence of that, he had the expert here Mr. Lorito, he could of asked Mr. Lorito did those prints look as though somehow some mysterious way someone could take a print from somewhere else and put it there? The question was never asked, Why wasn't it asked? Because he knew the answer.

MR. MASLANIK: Objection, your honor, that's talking about issues that are not in evidence. It's an attempt by the prosecutor to shift the burden of proof from the state to defendant and we'd move for a mistrial.

THE COURT: The objection is overruled. The motion for mistrial is denied.

Tarpley maintains that the prosecutor's closing argument was improper because it asserted a personal opinion as to the integrity of his counsel.

Tarpely also objects to the following statement made at the close of the State's argument:

What really happened there is clear. They thought that Stuart would be an easy mark, an easy target because when you talk to people about coming to Stuart most people come here because

they claim it to be and once it was a sleeply [sic] little town.

Tarpley's counsel then objected and moved for a mistrial. The trial court sustained the objection and instructed the jury to disregard the argument. The trial court, however, denied the motion for a mistrial.

The prosecutor continued with the following argument which Tarpley also contends entitled him to a mistrial:

MR. KIBBEY: Again, we'll stand on our position that when they left that jewelry store they were headed south. They were headed for the turnpike and when that was closed off, by roadblock, where were they headed? South. They didn't head north they didn't head west or east. They headed south.

The choice is yours now. We can't go in the jury room with you. We can't help you decide the case.

And I'm not going to be talking about persuasion and I'm not going to be talking uniforms or liars. I'm going to be talking about evidence and you're gonna have this this [sic] evidence. The evidence that we feel that you will find sufficient evidence to convict Mr. Topley because in fact he is guilty. And even if you feel that the police were as quick as they should have been you will agree that in fact that is not reason to let a guilty man go. And have no fear in becoming indignant when you get in the jury room. Indignant in the fact that this man is guilty. And that you have to convict him. You are representatives of the commuity [sic]. You have been selected from a pool of jurors who represent Martin County. And the county is relying upon you to decide this case fairly and honestly. Your decision will be a message. It's a message to the courts. It'll be a message to Mr. Topley—

Defense counsel again objected and moved for a mistrial. The trial court once again overruled the objection and denied the motion.

Tarpley claims that the prosecutor's argument to the jury was improper, since it went beyond the scope of the issues being tried, and inflammatory, having the effect of shifting, in the jury's mind, the State's ultimate burden of proof of guilt beyond a reasonable doubt. The State submits that the comments of the prosecutor were invited by defense counsel's inquiries into the lack of evidence and his comments upon the trumped up fraud perpetrated upon the appellant. As the preceding testimony indicates, the trial court instructed the jury to disregard the prosecutor's comments regarding defense counsel's tactics.

It has long been recognized that misconduct by a prosecuting attorney in closing argument may be grounds for reversing a conviction. *Berger v. United States*, 295 U.S. 78, 89, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). Part of this recognition stems from a systematic belief that a prosecutor, while an advocate, is also a public servant "whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." 295 U.S. at 88, 55 S.Ct. 633.

Prosecutorial misconduct is particularly dangerous because of its likely influence on the jury. Speaking of the prosecutor's duty to seek justice, the *Berger* Court stated,

[i]t is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuation, and, especially, assertions of personal knowledge are apt to carry much against the accused when they should properly carry none.

295 U.S. at 88, 55 S.Ct. at 633.

Notwithstanding this danger, on a state habeas corpus petition, our standard of review of the prosecutor's comments at trial is "the narrow one of due process, and not the broad exercise of supervisory power that (federal appellate courts) possess in regard to [their] own trial court(s)." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974).

Not all trial errors are so egregious as to render a trial fundamentally unfair. *Id.*

We do not believe that the prosecutor's closing argument, when viewed within the context of the entire judicial proceeding, deprived Tarpley of a fair trial. Even if the prosecutor's comments were improper, we note that the trial court gave a curative instruction to the jury which served to minimize the potentially prejudicial impact which the prosecutor's comments might otherwise have had. *See United States v. Alonso,* 740 F.2d 862, 874 (11th Cir.), *cert. denied,* 469 U.S. 1166, 105 S.Ct. 928, 83 L.Ed.2d 939 (1984) (the giving of a curative instruction by the trial court may remedy the effects of improper comments).

■ Finally, Tarpley asserts that his sentence for the offense of criminal mischief violates the Double Jeopardy Clause because no additional injury was caused by any criminal act which might otherwise warrant the imposition of an additional sentence. He contends that the criminal mischief in this case was subsumed within the burglary and grand theft and that to be sentenced separately for criminal mischief constitutes multiple punishment for the same offense. *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872 (1873) (Double Jeopardy Clause prohibits both subjecting a defendant to successive trials for the same offense and subjecting a defendant to multiple punishments for the same offense).

Our review of a state prisoner's claim that a state sentencing procedure violated the Double Jeopardy Clause is limited. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). "Where ... a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct ..., a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumula-

tive punishment under such statutes in a single trial." 459 U.S. at 368–69, 103 S.Ct. at 679. In this context, we are bound to accept the Florida court's construction of that State's statutes. *See* 459 U.S. at 368, 103 S.Ct. at 679.

The Supreme Court of Florida recently revisited the issue of the conviction of multiple criminal offenses based on a single act. *Carawan v. State,* 515 So.2d 161 (Fla. 1987). The *Carawan* court recognized that it is the legislature which has the power to define crimes and punishments, subject, of course, to constitutional limitations. In order to determine legislative intent for purposes of double jeopardy analysis, the *Carawan* court discussed the tripartite statutory analysis which courts should employ:

> The first is that absent a violation of constitutional right, specific, clear and precise statements of legislative intent control regarding intended penalties. Only where no clear intent exists does any other rule of construction come into play.... The second rule is that, in the absence of any clearly discernable legislative intent, the courts begin by using the test established in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to assist in determining this intent. [citation omitted]. Simply stated, the *Blockburger* test compares the elements of the crimes in question. If both have one element the other does not, then a presumption arises that the offenses are separate, a presumption that nevertheless can be defeated by evidence of contrary legislative intent.... We have recognized that the legislature has codified this rule of construction in section 775.021(4), Florida Statutes (1985).... The third rule is that courts must resolve all doubts in favor of lenity toward the accused. This 'rule of lenity,' a part of our common law, has been codified in section 775.021(1), Florida Statutes (1985)....

515 So.2d at 165.

While we have not found any clear expressions of legislative intent in this regard, nor have any been cited to us, we note that under the *Blockburger* test it is

presumed that the legislature intended to treat the offenses of burglary, grand theft and criminal mischief as separate offenses. Each of these crimes requires proof of facts which the others do not. Additionally, the punishment for each of these crimes redresses a separate injury to the victim: (1) the victim's business premises were violated (burglary); (2) the victim's merchandise was stolen (grand theft); and (3) other property of the victim was vandalized (criminal mischief). Since there has been no showing of any "relevant factors" which provide a reasonable basis for us to conclude that the legislature did not intend to impose multiple punishments, *see* 515 So.2d at 169, we hold that the sentence for criminal mischief does not violate the Double Jeopardy Clause.

For the foregoing reasons, the judgment of the district court is AFFIRMED.