[No. B037478. Second Dist., Div. Five. Dec. 27, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE PEREZ, Defendant and Appellant.

## COUNSEL

Christopher D. McIntire, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney

General, Donald E. De Nicola and William R. Weisman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

SUTTON, J.*—Jose Perez, defendant and appellant (Perez), appeals his jury trial conviction for selling marijuana in violation of Health and Safety Code section 11360, subdivision (a).

■   Two points are raised. The prosecution, by a supplemental "letter-brief," concedes an error in arithmetic in the computation of Perez's presentence credits. Perez claims entitlement to five days additional credit—the prosecution admits four days additional credit is due. The abstract of judgment allots 140 days custody credit and 70 days conduct credit. Both sides acknowledge Perez served 143 days in custody to the date he was sentenced, and he thus earned 71.5 days conduct credit. *People* v. *Scroggins* (1987) 191 Cal.App.3d 502, 508 [236 Cal.Rptr. 569], holds fractions of a day count as a whole day in the computation of presentence credits. 214.5 days rounded off to 215 days is the appropriate credit, and the judgment is modified to accord Perez a 215-day total time credit instead of the 210-day total credit he was accorded at sentencing. The abstract of judgment is ordered modified accordingly; otherwise, the judgment as modified is affirmed.

■   The substance of Perez's appeal centers on a single issue of whether it was error for the trial court to refuse to allow Perez to exhibit two tattoos to the jury. One tattoo was atop his left hand between thumb and first finger; the other was on the inside of his left arm near the elbow.

Perez was arrested in an "undercover buy." While Perez was standing on the sidewalk eating an ice cream bar, two undercover Los Angeles Police officers, Orton and Martinez, drove by slowly. Perez uttered "dime" loud enough to be heard by Officer Martinez through her rolled up window on the passenger side of the front seat of the unmarked vehicle driven by Officer Orton.

The car stopped; the passenger window was rolled down; Perez exhibited 2 one-inch by one-inch "baggies" of marijuana and one baggie was purchased by Martinez with a $10 bill. The serial number of the bill had been prerecorded by the officers. Orton drove around the next corner and pro-

---

* Assigned by the Chairperson of the Judicial Council.

ceeded to mark the baggie while Martinez began a walkie-talkie radio transmission as they departed to their confederate officer, Larry Voelke, who was waiting nearby in another unmarked police vehicle.

The description of Perez broadcast by Martinez was "male Mexican, [address] 602-606 Blythe, standing in a driveway . . . walking southbound . . . wearing a white long sleeve undershirt and brown cords . . . [with] . . . a [mustache]."

Officer Voelke drove to the scene of the purchase within 30 to 45 seconds but it took him about 10 minutes to locate and arrest the suspect. Within two minutes or so after the arrest Orton and Martinez drove back by the point of arrest and both Orton and Martinez confirmed to each other and to Officer Voelke that Perez, who was then in Voelke's custody, was the vendor of the marijuana.

When arrested no other marijuana was found on Perez, nor was the $10 premarked bill recovered. Perez had $1.05 in his possession. At trial counsel stipulated the baggie purchased by Martinez contained 1.2 grams of marijuana, obviating the need for expert testimony concerning the contraband.

Defense counsel, out of the presence of the jury, argued to be allowed to have Perez exhibit his tattoos to the jury without being sworn or giving testimony or, if the court required Perez to be sworn, to have cross-examination limited to the subject of the tattoos, only. Officer Martinez testified at no time did she ever observe any tattoos on Perez.

At this point some note of certain void spots in the evidence must be discussed. The record is silent on whether Perez was right-handed or left-handed. He could easily have manipulated the sale entirely with his right hand. If the contraband was in the palm of his left hand and he took a baggie from his left hand with his right hand, the tattoo on the back of his left hand would have been out of sight and not observable. If it was the ploy of defense counsel to impeach Martinez, by implication, by showing it was not Perez who sold the marijuana because no tattoo was ever observed on his left hand by Martinez, defense counsel overlooked the opportunity to establish just how the physical act of the sale occurred; i.e., which hand was used, or if both hands were used, or whether Perez for that matter, ever exhibited his left hand palm down so the tattoo could ever have been physically observed by Officer Martinez.

The evidence is abundantly clear Perez wore a long sleeve "thermal" type undershirt with the sleeves down at all times which would certainly have obscured any view of the tattoo on the inside of his left arm.

When the issue was raised the trial court voiced legitimate concerns about foundational evidence (discussed later), but it is clear from the record it would have been appropriate to sustain any objection to the arm tattoo as irrelevant since that tattoo was always covered by the long sleeve of Perez's shirt, and would have been unobservable under any circumstances.

The basis on which the trial court did rule, however, was that some foundation would have to be first established as to the length of time Perez had been tattooed. Defense counsel proposed and the court properly rejected the notion of an Evidence Code section 402 hearing outside of the jury's presence to have Perez testify to the age of and manner of acquiring the tattoos. The court correctly concluded the jury would still have to judge Perez's credibility in that regard. The trial court finally ruled that exhibition of the tattoo (presumably only the "relevant tattoo" on Perez's left hand) would be "testimonial" if offered to impeach Officer Martinez' testimony that she observed no tattoo on the hand of the vendor of the marijuana. This would have needs raised the question of whether Perez would be subject to cross-examination about this information. If viewed as "demonstrative" evidence, the tattoo would be irrelevant because there would have been no foundation first laid in accordance with the court's earlier expressed concerns.

Defense counsel suggests this is a case of first impression. However, there is "a California case" in the Federal Reports—a bank robbery case which arose in the United States District Court, for the Northern District of California. *United States* v. *Bay* (9th Cir. 1985) 762 F.2d 1314 [81 A.L.R. Fed.883], was a case where the defendant wished to exhibit tattoos on the backs of his hands without testifying. In the *Bay* case, as here with Officer Martinez, a (bank teller) witness denied a recollection of "anything unusual" about the defendant Bay's tattooed hands. Bay, however, was accused of several bank and savings and loan association robberies and eyewitness identification was shaky—four of eight witnesses could not identify him.

The *Bay* court noted the defendant argued and the government conceded a display of hands is "non-testimonial." (*Bay, supra,* 762 F.2d at p. 1315.) Federal law holds a defendant's being compelled to exhibit various types of physical characteristics to a jury does not infringe the defendant's Fifth Amendment rights against self-incrimination. (*United States* v. *Dionisio* (1973) 410 U.S. 1, 5-6 [35 L.Ed.2d 67, 74, 93 S.Ct. 764]: *Schmerber* v. *California* (1966) 384 U.S. 757, 764 [16 L.Ed.2d 908, 916, 86 S.Ct. 1826]: *Holt* v. *United States* (1910) 218 U.S. 245, 252-253 [54 L.Ed. 1021, 1030, 31 S.Ct. 2]: *United States* v. *Valenzuela* (9th Cir. 1983) 722 F.2d 1431, 1433.)

California is in accord with federal law on this point. (*People* v. *Turner* (1971) 22 Cal.App.3d 174, 181 [99 Cal.Rptr. 186]; *People* v. *Ellis* (1966) 65 Cal.2d 529, 533 [55 Cal.Rptr. 385, 421 P.2d 393].)

The *Bay* court's reasoning resorts to the expressed maxim what is " 'sauce for the goose is sauce for the gander.' " (*Bay, supra,* 762 F.2d at p. 1315.) If the prosecution can require a physical trait or characteristic of a defendant to be exhibited without damage to the defendant's rights against self-incrimination, the *Bay* court concludes there should be no reason why a defendant may not exhibit or call attention to such a physical characteristic without necessarily having to testify about it (and run the attendant risk of being cross-examined).

■ *Bay,* however, is factually distinguishable from this case in that the "foundation" question arose in *Bay* for the first time in the appeal process. Here, even though the trial court may have erred in suggesting that showing Perez's hand would be "testimonial evidence," should this court adopt *Bay* as valid precedent, in this case an abundant opportunity existed to establish "foundation" concerning Perez's tattoos by other than Perez's own testimony, and the point was fully aired and considered by the trial court and counsel. Anyone well enough acquainted with him could have been called to establish the existence of the tattoo on Perez's hand at or before the time of his arrest, and no reason would then have existed to prevent the exhibition of his tattooed hand to the jury as "demonstrative" evidence, as it was so characterized by the trial court.

*Bay* was not reversed outright, but instead was remanded for the taking of further "foundational evidence" in the United States District Court. The circuit court admonished that if such evidence could not be produced, the error of failing to allow Bay's tattoos to be exhibited would have amounted to reversible error if a foundation for such evidence could originally have been made; but, that if no such foundational evidence was forthcoming on remand, there would be no need to reverse the judgment or verdict.

The *Bay* opinion, also, makes no mention of any testimony in the record of that case of the mechanics of how each robbery occurred other than to state on each occasion a note was passed to a teller and money was handed over, in response. It might be fairly but unreliably noted "judicially" that most people hand notes to one another "palm up" or that in receiving the money handed over by the teller being robbed, the robber would extend a hand palm up to receive it, thus turning any tattoo on the back of the hand away from view. If the feigned or actual use was made of a concealed gun, chances are strong the robber would have had one hand in a pocket placed

on the real or "imaginary" gun, thus concealing any tattoo on the gun hand from view.

There is much to commend the underlying reasoning in the *Bay* case and that reasoning is adopted here—the desire of the defendant to show a scar, tattoo, gold tooth or other relevant physical characteristic without accompanying testimony (or concomitant cross examination) is merely the other side of the coin to the prosecution's right in both federal and California state courts to compel the relevant exhibition of such a physical characteristic without impinging a defendant's privilege against self-incrimination.

The *Bay* court's concerns on remand are nonexistent here, however. Perez's opportunity to establish a "foundation" for his tattoo was ample—his omission to do so was a waiver. Since Perez was given the opportunity, but declined to exercise it, by establishing a suitable foundation, the suggestion by the trial court the exhibiting of his tattoo to the jury was "testimonial" is harmless error and avoids the necessity to address the next question: Would Perez have been subjected to cross-examination? As a practical manner, had Perez's attorney simply asked Perez to stand and exhibit the tattoo(s) without saying anything, and then be seated, what sort of cross-examination could or would have been allowed? The gut question is whether the declined opportunity offered Perez to establish a "foundation" on the tattoos was declined because of the fear of being subjected to cross-examination. This launches the inquiry firmly into the realm of speculation, however, and the record is wholly deficient as to any protest or objection by defense counsel of any anticipated chilling effect the intimated but unfaced question would have posed, i.e., did the fear of being cross-examined divert or diminish any desire on Perez's part to lay a foundation "on the tattoos" to argue possible misidentification. Once again while easy to perceive as an issue it is impossible to find support for "what might have been" in the record. Absent at least some evidence (*Maynard* v. *Walker* (1959) 175 Cal.App.2d 145 [345 P.2d 478]) or "any evidence" in the record (*Balasco* v. *Chick* (1948) 84 Cal.App.2d 802 [192 P.2d 76]) to show some protest on Perez's part, the record is otherwise replete with abundant evidence of the opportunity missed by Perez to establish a foundation and is just as replete there was no firm conclusion on the trial court's part that if a foundation had been laid it would have inevitably led to the undesired cross-examination Perez wished to avoid.

## DISPOSITION

The judgment is modified to reflect additional credit of five days for a total of two hundred and fifteen presentence credit days, and the court is directed to prepare an amended abstract of judgment and forward a cer-

tified copy of it to the Department of Corrections. As modified, the judgment is affirmed.

Lucas, P. J., and Boren, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 14, 1990.