## A99A2108. WILSON v. THE STATE.
### (526 SE2d 381)

ELDRIDGE, Judge.

Appellant Ricky Trenell Wilson appeals from his conviction for child molestation, aggravated sexual battery, aggravated child molestation, and statutory rape. We affirm.

The facts, viewed in the light most favorable to the verdict,[1] are as follows: On February 11, 1998, a 13-year-old girl, K. B., and her 14-year-old friend, J. J., went to a grocery store near their Clayton County home. Wilson, whose nickname is "Pony," approached the girls and offered them a ride in his car. The girls rode with Wilson to an apartment complex, where Wilson parked the car. Wilson was in the front seat with K. B., and J. J. was seated in the back. Wilson reached over the seat and fondled J. J.'s genitalia. He attempted to do the same with K. B., but she resisted.[2] Soon thereafter, Wilson took the girls back to the shopping center. School admission records for both girls showed that they were absent that day.

On the morning of March 3, 1998, Wilson called K. B. and picked her up at home; K. B. was serving a school suspension. Wilson took K. B. to his apartment. K. B. sat in Wilson's bedroom and played with his dog while Wilson took a shower. Wilson emerged naked from the bathroom and began masturbating in front of K. B. A few minutes later, after he put on his clothes, Wilson sat on the bed next to K. B. and began fondling her breasts under her bra. When K. B. told him to stop, Wilson called her a "bitch" and took her to the same shopping center as in the February incident.

Two days later, J. J. missed the bus to school and called Wilson for a ride. Wilson picked her up and took her to his apartment. J. J. testified that she sat in Wilson's bedroom and played with his dog while he took a shower. While Wilson was still naked after the shower, he approached J. J. and made her perform oral sex on him. He then had sexual intercourse with her. When he was finished, Wilson got dressed and took J. J. to school. J. J.'s school attendance record showed that she was tardy that day.

A few days later, J. J.'s sister called her from college and noticed

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] Wilson was acquitted of one count of child molestation and one count of aggravated sexual battery.

that J. J. sounded "uneasy." After her sister kept "prying" for information, J. J. told her that she had had sex with an older man. The sister told J. J.'s mother, who then confronted J. J., who then admitted having oral sex and intercourse with Wilson. At trial, J. J.'s mother testified that she had noticed that J. J. had been very withdrawn during the days just prior to her sister's phone call, and that J. J. seemed "relieved" when her family found out about the sexual assault.

J. J.'s parents told K. B.'s mother, who questioned K. B. about Wilson. K. B. told her mother that Wilson had fondled her in February and again in March. K. B.'s mother testified that she had noticed in February that K. B.'s attitude had changed and that her grades had dropped severely.

The parents of J. J. and K. B. contacted the police, who interviewed the girls. Both girls gave similar descriptions of Wilson's apartment and bedroom, and the descriptions matched evidence obtained during a subsequent search of Wilson's apartment and admitted as evidence at trial. K. B. described Wilson as being "dark skinned," with braids, tattoos on his chest, and scratches on his side. J. J. indicated that Wilson had two tattoos on his chest and one on his arm. Detective Lilliana Stevens investigated the case, testified at trial, and took photographs of Wilson's chest and arm, which were admitted into evidence at trial. The photographs showed two tattoos on Wilson's chest and one on his right arm. Detective Stevens did not recall seeing any other tattoos.

Wilson was arrested after he was found hiding in the attic of his apartment while police were executing a search warrant. A jury trial was conducted from November 30 through December 2, 1998. Wilson moved for a directed verdict at the end of the State's evidence; the motion was denied. Wilson chose not to testify. Following his conviction, Wilson filed a motion for new trial, which was denied. He appeals. *Held*:

1. In his first enumeration, Wilson contends that the trial court erred in refusing to allow Wilson to display his torso to the jury. In making such request, Wilson was attempting to impeach the girls' testimony by demonstrating that he had a large tattoo on his abdomen which neither girl described during the investigation or at trial. Wilson also noted in argument that the police investigator's photograph showed only his upper chest and, therefore, did not show the abdominal tattoo. Defense counsel never made a proffer of proof for the record that an abdominal tattoo existed, when Wilson obtained such tattoo as a foundational fact, or how such evidence would be beneficial to him.

(a) The trial court ruled that Wilson could not display his torso to the jury unless Wilson took the stand and was subject to cross-examination as to when he obtained the abdominal tattoo. Based

upon previous rulings by this Court, the trial court did not abuse its discretion in refusing to allow Wilson to present nontestimonial evidence, i.e., his torso, to the jury without being subject to oath or cross-examination in order to lay a foundation as to when the tattoo had been made and that it was present on the date of the crimes. See *Wesley v. State*, 228 Ga. App. 342, 344 (4) (491 SE2d 824) (1997); *State v. Battaglia*, 221 Ga. App. 283, 284 (1) (470 SE2d 755) (1996).

(b) Further, in order to display this type of evidence to the jury, a proper foundation must be laid, i.e., the party seeking to admit the evidence must demonstrate that it truly and accurately depicted the condition of the nontestimonial evidence at the time of the event at issue. See *Miller v. State*, 158 Ga. 697, 699 (5) (b) (124 SE 195) (1924); *Johnson v. State*, 158 Ga. 192, 198 (2) (123 SE 120) (1924); *Chambers v. State*, 159 Ga. App. 669 (284 SE2d 682) (1981); *Curtis v. State*, 141 Ga. App. 36, 39 (232 SE2d 382) (1977). The trial court has discretion in making the determination of whether a party has laid a sufficient foundation for introduction of the evidence, and such determination will not be disturbed on appeal absent an abuse of discretion. *Cornell v. State*, 265 Ga. 904, 905 (2) (463 SE2d 702) (1995); *Miller v. State*, supra at 698 (2).

In this case, when ruling on Wilson's request to display his torso to the jury, the trial court specifically reasoned that such display would not establish "whether or not he added any [tattoos] after the events, whether he had them changed or removed or added." In its subsequent order denying Wilson's motion for new trial, the trial court stated that, "[t]he clear implication, if the defendant had been allowed to exhibit [the tattoo] to the jury, would have been that it was present during the incident in question *without any testimony verifying that fact*." (Emphasis supplied.) The record, therefore, clearly shows that the trial court did not deny Wilson's request because he would not waive his right against self-incrimination, but because Wilson failed to establish *any* foundation for the evidence.[3] The trial court did not abuse its discretion in so ruling. See *Mize v. State*, 187 Ga. App. 418, 419 (1) (370 SE2d 525) (1988); see also *Brown v. United States*, 356 F2d 230, 233-234 (7) (10th Cir. 1966).

Detective Stevens observed Wilson's naked chest and abdomen to take the photographs shortly after the arrest and did not observe such abdominal tattoo. Defense counsel never specifically asked Detective Stevens if there had been an abdominal tattoo. Thus, the evidence in the record did not show an abdominal tattoo at the time

---

[3] As such, this case is distinguishable from the case cited by appellant, *State v. Sanders*, 691 SW2d 566, 569 (Tenn. App. 1984), in which the trial court's refusal to allow the defendant to demonstrate his height (a characteristic which cannot be altered) was based *solely* on the defendant's refusal to testify.

of the commission of the crimes, although one may have existed at the time of trial. Further, the trial court never precluded Wilson from presenting *other* foundation evidence that would have established that the tattoo was present prior to March 1998. This evidence could have included, inter alia, witness testimony, business records, or photographs. Wilson failed to present, or even proffer, such foundation evidence at trial.[4] Therefore, he waived any complaints about the trial court's exclusion of evidence of the abdominal tattoo.[5] See *People v. Perez,* 216 Cal. App. 3d 1346 (265 Cal. Rptr. 400) (1989).

(c) Finally, Wilson sought to impeach K. B. and J. J. by disproving facts testified to by them regarding the tattoos seen. See OCGA § 24-9-82. What Wilson contended was that they did not see an "alleged" large tattoo on his abdomen; therefore, the girls did not see him nude. However, the failure to see the "alleged" tattoo would not necessarily impeach the testimony of the witnesses, because it does not contradict the witnesses' testimony but may only demonstrate the incompleteness of it. This properly was an issue of witness identification as to weight and credibility for the jury. See *Pace v. State,* 235 Ga. App. 872, 873 (510 SE2d 617) (1999); *Chergi v. State,* 234 Ga. App. 548, 549 (2) (507 SE2d 795) (1998); see also *Little v. State,* 135 Ga. App. 772 (219 SE2d 19) (1975) (whether witness saw tattoos goes to weight and credibility).

2. Wilson also challenges the denial of his motion for a directed verdict of acquittal on the statutory rape conviction. When reviewing the denial of such motion on appeal, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. *Ogles v. State,* 218 Ga. App. 92, 93 (2) (460 SE2d 866) (1995). This Court does not weigh the evidence or determine witness credibility, but determines only whether the evi-

---

[4] Since no foundation evidence was presented in this case, this Court will not consider whether it would have been reversible error for the trial court to refuse to allow Wilson to display his torso unless he subjected himself to cross-examination if other foundation evidence had been presented. Further, even if a proper foundation had been laid, it would be impossible for this Court to determine whether the error contributed to the judgment. See *Letlow v. State,* 222 Ga. App. 339, 343 (2) (474 SE2d 211) (1996). There are no photographs or descriptions of the abdominal tattoo in the record. Wilson failed to proffer any evidence to establish the size, shape, color, or nature of the tattoo at issue. In fact, the only evidence that such tattoo exists *at all* is Wilson's assertion. See *Daniels v. State,* 248 Ga. 591, 596 (285 SE2d 516) (1981) (Smith, J., dissenting); see *Little v. State,* 135 Ga. App. 772 (2) (219 SE2d 19) (1975) (harmless error to allow the recall of an identification witness after defendant under oath exhibited tattoos all over his arms).

[5] As such, this case is distinguishable from *United States v. Bay,* 762 F2d 1314, 1315-1316 (9th Cir. 1984), cited by appellant, wherein the appellate court found that the trial court had not considered or ruled upon the foundation issue, so that the defendant had not waived his right to present a foundation for the excluded evidence. In remanding the case for a hearing, the appellate court held that, if the defendant could establish a foundation on remand, he was entitled to a new trial. Id. at 1317.

dence was sufficient for a rational trier of fact to find that Wilson was guilty beyond a reasonable doubt of statutory rape. Id.; see also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990). "A motion for a directed verdict . . . should only be granted when there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law. [Cits.]" *Watson v. State*, 235 Ga. App. 381, 383 (1) (509 SE2d 87) (1998).

In attacking the sufficiency of the evidence of statutory rape in this case, Wilson contends only that the victim's testimony was not corroborated, as required by OCGA § 16-6-3 (a).[6] We disagree.

> [I]t is well settled that it is not necessary that the [victim's testimony] be corroborated as to every essential element of the crime, or that it establish the defendant's guilt, but only that the corroborating evidence tend to establish his guilt and be of such a character and quality as tends to prove the guilt of the accused by connecting him with the crime. Moreover, the quantum of corroboration needed is not that which is in itself sufficient to convict the accused, but only that amount of independent evidence which tends to prove that the incident occurred as alleged. Slight circumstances may be sufficient corroboration and ultimately the question of corroboration is one for the jury.

(Citations, punctuation and emphasis omitted.) *Dye v. State*, 205 Ga. App. 781-782 (2) (423 SE2d 713) (1992). See also *Simpson v. State*, 234 Ga. App. 729, 730-731 (2) (507 SE2d 860) (1998); *In the Interest of B. L. S.*, 264 Ga. 643, 644 (2) (449 SE2d 823) (1994). In particular, a victim's "prior consistent statements, as recounted by third parties to whom such statements were made, can constitute sufficient substantive evidence of corroboration in a statutory rape case." (Citations and punctuation omitted.) *Lee v. State*, 232 Ga. App. 300, 302 (2) (501 SE2d 844) (1998). See also *Turner v. State*, 223 Ga. App. 448, 450 (2) (477 SE2d 847) (1996); *Ogles v. State*, supra at 93 (1) (b).

In this case, J. J. testified that Wilson picked her up before school, took her to his apartment, forced her to perform oral sex on him, had sexual intercourse with her, and then took her to school. J. J.'s mother and sister both testified that J. J. told them that she had had sexual intercourse with Wilson. In addition, the mother tes-

---

[6] Under OCGA § 16-6-3 (a), a "person commits the offense of statutory rape when he or she engages in sexual intercourse with any person under the age of 16 years and not his or her spouse, provided that no conviction shall be had for this offense on the unsupported testimony of the victim."

tified that J. J.'s demeanor changed dramatically after the rape. Finally, J. J.'s school attendance records confirm that she was tardy on the day of the rape, confirming her testimony regarding the timing and circumstances of the rape. This evidence was sufficient corroboration of the victim's testimony. There was no error.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 30, 1999 —
RECONSIDERATION DENIED DECEMBER 14, 1999 — 

*Patricia F. Angeli*, for appellant.

Ricky T. Wilson, *pro se*.

*Robert E. Keller, District Attorney, Staci L. Guest, Assistant District Attorney*, for appellee.

