# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JUNE SESSION, 1999



FILED

September 7, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | **)** | **C.C.A. NO. 02C01-9810-CC-00337** |
| | **)** | |
| Appellee, | **)** | |
| | **)** | |
| | **)** | **MADISON COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. ROGER A. PAGE,** |
| **ERIC JUAN DODD,** | **)** | **JUDGE** |
| | **)** | |
| Appellant. | **)** | (Misdemeanor Drug Possession) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CIRCUIT COURT OF MADISON COUNTY

FOR THE APPELLANT:

MIKE MOSIER
204 West Baltimore
Jackson, TN 38302-1623

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General and Reporter

R. STEPHEN JOBE
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

JERRY WOODALL
District Attorney General

SHAUN BROWN
Assistant District Attorney General
Lowell Thomas State Office Building
Jackson, TN 38301

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Eric Juan Dodd, appeals from his misdemeanor conviction for simple possession of marijuana. Defendant was charged on a two-count indictment with possession of marijuana with intent to sell and possession of marijuana with intent to deliver, both in violation of Tennessee Code Annotated § 39-17-417. The jury returned a verdict for the lesser included offense of simple possession on each count, and the trial judge merged the two convictions. Because Defendant committed this offense while on parole, the trial court sentenced him to eleven months, twenty-nine days, to be served at seventy-five percent, consecutive to the offense for which he violated parole.

In this appeal, Defendant argues that the trial court violated his right to a fair trial in two ways: (1) by commencing the jury trial while Defendant was dressed in a prison-type jumpsuit with letters representing West Tennessee Detention Facility, and (2) by denying his request to try on in the presence of the jury clothing found in the duffel bag containing marijuana. Because we find that any error committed by the trial court was harmless, we affirm Defendant's conviction and sentence.

The transcript of the evidence at trial revealed that Sergeant Randall Hampton and Officers Greg Slack and Shane Laney of the Jackson Police Department were patrolling area motels in connection with an investigation of recent motel robberies. While in the parking lot of the Super 8 Motel in Jackson, Sergeant Hampton noticed a car speed into the lot and pull behind parked cars

but not into a parking space. The driver, later identified as Defendant, "jumped out, left the parking lights on, and ran into one of the rooms." After just a few moments, Defendant exited the room with another male, they both entered the car, and Defendant drove away. According to Hampton, Defendant carried nothing into the motel room but carried out a briefcase. The passenger, who had not arrived with Defendant, carried out a duffel bag. The men threw both articles into the backseat of the car.

Hampton testified that another officer obtained the license plate number of the car and Hampton reported the number to his dispatcher. Only a few minutes later, Hampton heard other officers stationed at the Comfort Inn call in the same license tag over the police radio. He then advised officers at the Comfort Inn of what he had observed at the Super 8 Motel.

Officer Slack, who was patrolling the area of the Comfort Inn the evening in question, noticed a black male later identified as Defendant sitting in a car outside the Comfort Inn. He testified that he noticed Defendant because the motel robbery suspects had been described as black males. The officers drove around the parking lot several times, and when they returned to that spot, Defendant was still sitting in the car, so they called in his license tag number.

Officers Slack and Laney stopped to talk to Defendant, and Slack testified that they told Defendant they were patrolling the area because of recent motel robberies. They asked Defendant for his identification, which he produced, and they then asked him to step out of his car so that they could pat him down for weapons. The officers noticed the briefcase and duffel bag in the backseat of the

car and asked Defendant about them. Defendant reportedly responded that they did not belong to him; they belonged to a man named Theodore. Defendant could not give the officers Theodore's last name.

The two officers asked Defendant for consent to search the briefcase and duffel bag. Defendant repeated that the items did not belong to him and that he was at the motel to "drop somebody off." Then, according to Officer Slack, upon being asked again for consent to search, Defendant made a statement to the effect of, "Yeah, I don't care what you do, but that's not my bag and briefcase." Slack opened the duffel bag, removed clothing at the top of the bag, and found a black plastic bag covering five clear plastic bags of what Slack believed to be marijuana. He then searched the briefcase and found a small paper bag containing approximately twenty grams of what he believed to be marijuana. Other testimony at trial revealed that the substance was marijuana; the quantity found in the duffel bag totaled 2,136 grams (approximately five pounds), and the quantity found in the briefcase was 18 grams.

Slack testified that they found a picture in the briefcase and that Defendant identified the man as Theodore, the owner of the briefcase and duffel bag. Police later learned that the man in the photograph was Theodore Nelson. Slack stated that although they would have charged Nelson with possession of marijuana with intent to resell, they never located him. Officer Laney testified at trial to essentially the same facts as Officer Slack, except he stated regarding the search, "The first few times [Officer Slack requested Defendant's consent to search the bags] he said he couldn't, but then he told him he could go ahead and search them. They weren't his."

-4-

## I. APPEARANCE IN PRISON CLOTHING

Defendant first asserts that because he appeared before the jury in prison garb—a blue-green jumpsuit with letters abbreviating West Tennessee Detention Facility on the back—the trial court abridged his constitutional rights to due process and a fair trial. The State responds that Defendant failed to demonstrate actual prejudice, and thus any error is harmless under Carroll v. State, 532 S.W.2d 934, 936 (Tenn. Crim. App. 1975).

The seminal case on appearance in prison garb at trial is Estelle v. Williams, 425 U.S. 501 (1976). In that case, Chief Justice Burger, writing for the Court, noted that "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment" and that "[u]nlike physical restraints, . . . compelling an accused to wear jail clothing furthers no essential state policy." Id. at 504-05. However, the Court also recognized that many criminal defendants choose to wear prison clothing in a tactical attempt to elicit juror sympathy. Id. at 508. Therefore, according to the majority, a defendant must object to being tried in prison garb before such a complaint may be reviewed on appeal. Id.

The defendant in Estelle did not object at trial to his appearance, and the Supreme Court held,

> [A]lthough the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation.

Id. at 512-13.

In the case at bar, however, Defendant did make the proper objection and his counsel questioned him on the record regarding this objection. Therefore, the appropriate and ultimate question for review is whether the defendant was compelled to appear in prison or jail attire for trial. Id. We conclude that the court did not compel him to appear in the jumpsuit; furthermore, even if the trial court's action could be construed as compulsion, any error was harmless beyond a reasonable doubt.

Prior to commencement of Defendant's trial, defense counsel explained to the court, "[Defendant's] mother was supposed to deliver some [civilian] clothes here this morning at 8:00 and apparently she didn't," and counsel noted that the only alternative clothing to his actual prison clothing would be the detention center jumpsuit, which is similar to regulation prison clothing. The trial judge responded that the jury should not see Defendant until the issue was decided, and he expressed concern over a continuance because Defendant had previously requested a speedy trial. The court declared its "inclination . . . to go ahead and try the case."

Defense counsel replied, "Mr. Dodd wants a trial. I've advised him that he has the right to interpose an objection as to the clothes that he's been furnished. I guess maybe the thing to do is place him under oath and let me question him about it." After being sworn, Defendant, when asked whether he wished to proceed to trial and permit the jury to see him in the jumpsuit, responded, "No, not really, but I don't want to keep putting it off and off. Go ahead and get it over with." Defense counsel informed him that if he interposed an objection and the judge ruled in his favor, Defendant likely would not be tried for another three

months. The following colloquy was then held on the record between Defendant and his counsel:

> Q       Mr. Dodd, just let me ask you, do you wish to go to trial today dressed in the clothes that you have on, which is [sic] not civilian clothes?
> A       I don't, but I don't want to get it put off until January. The detainer has denied me too many privileges in the penitentiary.
> Q       You want us to try your case today as you're dressed now?
> A       I don't really have a choice, do I?
> Q       You have a choice to make an objection as to being put to trial in that clothing. It will be the Court's obligation to rule on that objection.
> A       Yeah. I'll object to it.

The trial judge then overruled the objection, stating the court's intention to minimize the effect upon the jury by seating Defendant at the far side of the bench where the jury would never see the lettering on the back of his jumpsuit.

We find that the trial judge did not "compel" Defendant to appear in a jumpsuit. "[A] trial court's failure to honor a defendant's request not to be tried in prison garb does not amount to state compulsion when the defendant has had a reasonable opportunity to appear in other clothes but fails to do so." State v. Zonge, 973 S.W.2d 250, 257 (Tenn. Crim. App. 1997) (citing Tarpley v. Dugger, 841 F.2d 359, 361 (11th Cir. 1988)). In Zonge, we affirmed the trial court's conclusion that "had the defendant been diligent, he could have secured other clothes." Id. (where defendant stated he had scheduled for civilian clothes to be delivered for original commencement of trial four days earlier, but because trial was delayed, he could no longer obtain civilian clothing). Likewise, in Tarpley, the Eleventh Circuit found no compulsion where the defendant's wife explained that she had attempted, four months prior to trial, to deliver civilian clothing but was refused the opportunity. 841 F.2d at 361. In Tarpley, however, the trial court had offered the defendant additional time to procure alternate clothing and had

suggested local agencies that could likely have delivered him clothing.  Id.; see also United States v. Grady, 997 F.2d 421, 424 (8th Cir. 1993) (determining that defendant was not compelled to stand trial in prison clothing where his counsel contacted his wife and requested civilian clothes, she failed to bring them during voir dire, but defendant appeared in civilian clothing the remainder of trial).

In this case, the record reflects Defendant clearly indicated that although he was displeased to wear the detention center jumpsuit, he would rather do so than continue the case for a period of time.  He was given an opportunity to secure alternate clothing, but that clothing did not arrive.  Under these circumstances, and in light of our opinion in Zonge, we hold that the trial court did not compel Defendant to wear the jumpsuit.

Furthermore, in the interest of facilitating further review, we additionally conclude that if these facts demonstrate a compulsion to stand trial in prison attire, any such error was harmless beyond a reasonable doubt.  The trial court accommodated Defendant by placing him away from the jury, where the detention center lettering could not be seen; moreover, it appears that the blue-green jumpsuit worn by Defendant was furnished to him as an alternate to his regulation prison garb, which we assume was more conspicuously indicative of custody.  The record contains a photograph of the Defendant wearing the jumpsuit, and we observe that it does not appear obvious that the jumpsuit is "prison garb."  Finally, Defendant appeared in the jumpsuit for the duration of voir dire only; he was provided civilian clothes for the remainder of his trial.  Any error by the trial court was harmless beyond a reasonable doubt.

## II. CLOTHING FROM DUFFEL BAG

Defendant's second and final assignment of error is that the trial court improperly refused to permit him to try on the clothing contained in the duffel bag from which the marijuana was seized by police. Defendant intended to show that the clothes in the bag did not belong to him, raising the inference that the marijuana found therein did not belong to him. The trial court ruled at trial that if Defendant desired to wear the clothes before the jury, he would be considered to have waived his privilege against self-incrimination and be subject to cross-examination.

The State concedes that the trial court erred by ruling that Defendant would be subject to cross-examination. The law of this state is clear that exhibiting oneself before the jury is non-testimonial; therefore, a defendant does not waive the privilege against self-incrimination and subject himself to cross-examination in such a situation. State v. Rodriguez, 752 S.W.2d 108, 113 (Tenn. Crim. App. 1988) ("[W]e hold that the defendant can introduce, 'demonstrative real or physical evidence' by exhibiting himself to the jury in items of clothing relevant to the inquiry, whether he testifies or not."); State v. Sanders, 691 S.W.2d 566, 568-69 (Tenn. Crim. App. 1984). The Rodriguez court found, however, that "the evidence of Mr. Rodriguez's guilt—apart from the clothing—was so overwhelming that any error in denying him the opportunity to model the shirt for the jury was harmless beyond a reasonable doubt . . . and did not affect the judgment or result in prejudice to the judicial process." Id. (citing Tenn. R. Crim. P. 52(a) and Tenn. R. App. P. 36(b)).

The State argues, however, that because Defendant did not take advantage of the trial court's alternative option—permitting a comparison of his physical body size to the size of the clothes as held up before the jury, because the manner in which a trial is conducted is within the great discretion of the trial court, and because the evidence brought by the State to convict Defendant was so strong, the trial court's error does not require a reversal of his conviction.

Due process requires that a defendant be permitted to present a full defense. Chambers v. Mississippi, 410 U.S. 284 (1972). This due process right has generally been examined by courts in the context of presentation of witness testimony. See, e.g., United States v. Corr, 543 F.2d 1042, 1051 (2d Cir. 1976). However, this right to present a full defense, which applies as well to demonstrative and real evidence, may be limited by procedural and evidentiary concerns. See United States v. Bifeld, 702 F.2d 342, 350 (2d Cir. 1983) ("A defendant's right to present a full defense, including the right to testify on his own behalf, is not without limits."). "In responding to the charges against him, an accused must comply with the established rules of procedure and evidence, as must the prosecution, in order to ensure a fair trial." Id. (citing Corr, 543 F.2d at 1051).

In United States v. DeStefano, 476 F.2d 324 (7th Cir. 1973), the court determined that no violation of a defendant's right to present a full defense occurs unless the witness denied to the defendant could have produced relevant and material testimony. Id. at 330. We believe this inquiry is also appropriate for the circumstances at hand because we agree with the State that although the trial court should not have concluded that the act of trying on clothes was testimonial,

the trial court nevertheless retains wide discretion to regulate the proof during trial in accordance with the rules of procedure and evidence. The trial judge suggested an alternative method for attempting to demonstrate to the jury that the clothes were not the correct size for the Defendant to wear.

In this case, upon an examination of the record to determine whether Defendant's requested exhibition before the jury would have been relevant or material, we find this argument by defense counsel: "It just seems to me that we would be entitled to put that type of demonstration on to show that we think—I mean, we don't know. We never tried those clothes on, but we think the clothes will show that they don't fit him." The Defendant made no offer of proof concerning this evidence; therefore the record does not reflect whether the clothing found in the duffel bag would have fit the Defendant. Finally, we find that even if the trial court denied Defendant's right to present a full and fair defense, the relatively low probative value of proving that the clothing did not fit him—in light of the testimony by two police officers that he assisted in obtaining the duffel bag, was in possession of the duffel bag, and had control over the car with the items—rendered any such error harmless.

We conclude that the record does not reflect that Defendant's right to due process was deprived either by standing trial in prison garb for a short time and with limited exposure or by being denied the opportunity to exhibit himself to the jury in clothing he claimed did not belong to him. We therefore affirm his conviction and sentence.

_____
DAVID H. WELLES, JUDGE


CONCUR:



_____
THOMAS T. WOODALL, JUDGE


_____
NORMA McGEE OGLE, JUDGE