## A10A1708. PELOWSKI v. THE STATE.
(701 SE2d 529)

JOHNSON, Judge.

In the first phase of a bifurcated trial, a jury found John Daniel Pelowski guilty of aggravated assault and possession of a firearm during the commission of a felony, and it found him not guilty of influencing a witness. Immediately thereafter, Pelowski was tried for possession of a firearm by a convicted felon, and the jury also found him guilty of that charge. Pelowski appeals from the conviction entered on the verdicts and the denial of his motion for new trial, claiming that the trial court erred in (i) allowing the jury to hear evidence, during the first phase of his bifurcated trial, that he had been previously convicted of aggravated assault, (ii) permitting the state's expert witness to testify regarding matters outside of his purview, and (iii) improperly instructing the jury. For the reasons set forth below, we reverse.

Construed most strongly in support of the verdicts,[1] the evidence shows that Pelowski met the victim, John Zucker, at a rehabilitation center for alcoholics and that Zucker invited Pelowski to stay at his home and work at his cabinetry business after leaving the center. Pelowski suffered a relapse on the day he moved in with Zucker, and Zucker relapsed approximately two weeks later. The men began drinking and arguing on a regular basis, and the arguments escalated to the point that Zucker started carrying a revolver in the

---

[3] *State v. Stulb*, 296 Ga. App. 510, 512 (675 SE2d 253) (2009).
[4] Id.
[1] See *Moore v. State*, 285 Ga. 157 (1) (674 SE2d 315) (2009).

pocket of his pants.

On September 7, 2005, Zucker called 911 to report that Pelowski was threatening to kill him. The police officers who responded to the scene found that both Zucker and Pelowski were "very intoxicated[,]" and they arrested Zucker for disorderly conduct.

On September 19 and September 26, 2005, Zucker left messages with Pelowski's probation officer to report that Pelowski had been drinking and that he was belligerent. The probation officer noticed that Zucker's voice was slurred on the recordings, and after Zucker left the second message, he acknowledged that he drank some beer before Pelowski began threatening him.

According to Zucker, Pelowski told him that he knew he had contacted his probation officer and that he was going to kill him. Pelowski then "slammed his arm into [Zucker's] face and he grabbed at [Zucker's] pocket with both hands" in an effort to gain control of Zucker's gun. Zucker also attempted to grab the gun; after the gun was somehow removed from Zucker's pocket, the two men fought over it "for a good while." Zucker claimed that Pelowski eventually gained control of the gun and shot him in the upper abdomen.

1. Pelowski alleges that the trial court erred in allowing the state to introduce evidence that he had been previously convicted of aggravated assault. During Zucker's testimony, the state played recordings of three telephone conversations between Pelowski and Zucker that formed the basis of the allegation that Pelowski had sought to influence Zucker's testimony. During one of these recorded conversations, Zucker stated that Pelowski had previously shot "at least two other people" and that he had two prior convictions for aggravated assault. Pelowski replied that Zucker's claims were not true, but Zucker asserted that he had been informed of Zucker's prior convictions by the district attorney's office. The trial court denied Pelowski's request to redact these statements from the recording.

> [T]he general rule is that on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent from that for which he is on trial, even though it be a crime of the same sort, is irrelevant and inadmissible.[2]

While similar transaction evidence may be admitted under certain

---

[2] (Citation and punctuation omitted.) *Stephens v. State*, 261 Ga. 467, 469 (6) (405 SE2d 483) (1991).

conditions, the state did not request a pre-trial hearing pursuant to Uniform Superior Court Rule 31.3 (B) regarding the admissibility of evidence of Pelowski's prior crimes as similar transactions.[3] Instead, the state sought to admit the evidence of Pelowski's prior criminal activity pursuant to the impeachment rules of OCGA § 24-9-84.1 (a) (2).

The impeachment rules apply, however, only where a defendant testifies.[4] Here, Pelowski did not testify, and it is uncontroverted that he did not otherwise place his character into evidence. In addition, the state did not present evidence that the probative value of the evidence of Pelowski's prior conviction substantially outweighed its prejudicial effect, as required by OCGA § 24-9-84.1 (a) (2); nor did the trial court ever make an express finding of such.[5]

Alternatively, the state sought to introduce Zucker's claims regarding Pelowski's prior offenses as res gestae evidence pursuant to OCGA § 24-3-3. Under that statute, "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." While it is in the discretion of the trial court to determine whether evidence is admissible under the res gestae rule, the question on appeal is "whether the factfinder would be authorized to believe the declarations were made without premeditation or artifice, and without a view to the consequences."[6]

Here, the recorded phone calls were made several months after Zucker was shot, and the state claims that the "act" connected with Zucker's statements on the recording at issue was Pelowski's alleged attempt to influence Zucker's testimony. Zucker admitted, however, that he recorded the phone calls because he hoped that Pelowski "would say things that would be damaging to his case[,]" and it is clear that Zucker had both the time and opportunity to deliberate about what he would say on the recordings. As a result, if the trial court admitted the recordings of Zucker's statements pursuant to the res gestae rule, such admission would have been in error.[7]

On appeal, the state claims that the statements made by Zucker on the recording at issue were harmless and that the jury was made sufficiently aware that Zucker was mistaken in his claim that Pelowski had previously shot two people. At trial, after the state played the recording at issue, Pelowski's counsel asked the trial court

---

[3] See *Grant v. State*, 302 Ga. App. 661, 664 (2) (691 SE2d 581) (2010).

[4] OCGA § 24-9-84.1 (a).

[5] See *Quiroz v. State*, 291 Ga. App. 423, 428-429 (4) (662 SE2d 235) (2008).

[6] (Citation and punctuation omitted.) *Wilbourne v. State*, 214 Ga. App. 371, 372 (1) (448 SE2d 37) (1994).

[7] Id. at 372-373 (1).

if "we [could] take a break here real quick [because] I believe we've already stipulated in discussions prior to court that John Pelowski has never been charged or convicted of shooting anyone." The trial court stated, "I think that was going to be part of the —"; and the state's attorney interrupted, "That's correct, Judge, and the jury should be clear that that was — and I'm going to make that clear through testimony of Mr. Zucker that that was a mistake on his part when he just said that." During Zucker's testimony, however, the state did not take any action to clarify the statements made by Zucker on the recording.

Even if the jury understood the state's acknowledgment to the trial court that Pelowski had never been charged or convicted of shooting anyone, it still could have been left with the impression that Pelowski had shot "at least two other people" as Zucker claimed, but that he had never been charged for those crimes;[8] or that he had two prior aggravated assault convictions as Zucker had claimed, but that the prior convictions did not involve shooting anyone. In addition, the trial court did not instruct the jury to disregard Zucker's statements regarding Pelowski's criminal record.[9]

No independent ground authorized the introduction of evidence that Pelowski had been previously convicted of aggravated assault, and the evidence against him was not so overwhelming as to make it highly improbable that the error did not contribute to the judgment.[10] Zucker's statements regarding Pelowski's criminal record were inherently prejudicial,[11] and, as a result of their admission, Pelowski's convictions must be reversed.[12]

2. Pelowski also claims that the trial court erred in permitting the state's expert witness, a doctor who had operated on Zucker, to testify regarding matters outside of his purview. Because this line of testimony is likely to recur on retrial, we address this enumeration of error on its merits.

The doctor, who was tendered as an expert in surgery, was asked by the state if he had "an opinion whether or not a handgun that could have been in the pocket . . . of Mr. Zucker could have . . . fired the projectile to cause [Zucker's] injury[.]" The doctor responded that he could not "imagine a way in which a gun in [Zucker's]

---

[8] While the state acknowledged during Pelowski's trial for possession of a firearm by a convicted felon that Pelowski's prior aggravated assault conviction did not involve shooting anyone, this acknowledgment was made after Pelowski was found guilty of aggravated assault and possession of a firearm during the commission of a felony.

[9] Compare *Lewis v. State*, 255 Ga. 681, 683 (2) (b) (341 SE2d 434) (1986).

[10] See *Johnson v. State*, 275 Ga. 508, 511 (3) (570 SE2d 292) (2002).

[11] Id. at 510 (3).

[12] See *Stephens*, supra.

pockets would . . . create a trajectory down toward the pelvis."

While Pelowski claims that the question sought testimony that required an expertise in ballistics, the state explicitly informed the witness that it was merely "asking about the path of the bullet in [Zucker's] body." Given that the surgeon was qualified to give an opinion on the location and angle of Zucker's wound, the trial court did not abuse its discretion in permitting the testimony.[13]

3. Finally, Pelowski claims that the trial court erred in providing a confusing charge regarding what constituted "possession" of a firearm. Given that the state acknowledges that the charge at issue was "mere surplusage," the trial court is unlikely to provide this charge on retrial and we need not address this enumeration on the merits.

*Judgment reversed. Miller, C. J., and Phipps, P. J., concur.*

DECIDED SEPTEMBER 13, 2010.

*Jimmonique R. S. Rodgers*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, Layla H. Zon, Assistant District Attorney*, for appellee.

[13] See *Robertson v. State*, 225 Ga. App. 389 (1) (484 SE2d 18) (1997).
[1] *State v. Ealum*, 283 Ga. App. 799, 801 (643 SE2d 262) (2007).