**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 1, 2013**

# In the Court of Appeals of Georgia

A12A2557. JACKSON v. THE STATE.

BRANCH, Judge.

Chelsea Jackson was tried by a Pulsaki County jury and convicted of selling cocaine, in violation of OCGA § 16-13-30. He now appeals from the denial of his motion for a new trial, arguing that his lawyer's failure to object to the introduction of improper character evidence constituted ineffective assistance of counsel. Jackson further asserts that the court below committed plain error when it failed to instruct the jury, sua sponte, to disregard the improper character evidence. We find no error and affirm.

On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict. *Martinez v. State*, 306 Ga. App. 512, 514 (702

SE2d 747) (2010). So viewed, the record shows that in the fall of 2008, the Oconee Drug Task Force was using Stuart Lawson as a confidential informant to make undercover drug buys in and around Pulaski County, with these buys resulting in arrests and/or search warrants. On the day in question, a narcotics agent working the investigation met with Lawson and wired him with an audio-video recording device, which Lawson wore on his person and which recorded all of Lawson's activities. The agent also searched Lawson and the vehicle that Lawson was using, including both the passenger compartment and the trunk, and provided Lawson with $40 with which to buy drugs. Additionally, the agent followed Lawson in a separate vehicle, although he could not remain close enough to Lawson to see the exchange of drugs that occurred that day.

Lawson testified at trial and explained that on the day in question he made two cocaine purchases from two different people, with the second purchase being made from Jackson. After he made the buy from Jackson, Lawson then returned to a designated location and met again with the narcotics agent, to whom he gave the

drugs.[1] Tests performed on the drugs purchased from Jackson were positive for cocaine.

Lawson also authenticated the audio-video recording he made on the day in question, and that recording was played in its entirety for the jury. The recording, which is approximately 30 minutes long, shows Lawson meeting with and receiving money from the narcotics agent and then chronicles his movements as he drives around looking for opportunities to purchase drugs. Lawson's first purchase of cocaine occurred approximately 16 minutes into the recording, and the transaction took less than one minute. He then relayed the address of the home where he made the purchase to law enforcement. Shortly thereafter, Lawson can be heard saying, "I got one. Going to see if I can get me one more."

Approximately two minutes after he completed his first drug buy, the recording shows Lawson slowing his car and then saying out of his window, "Good to see you, Red."[2] There is an unintelligible response from someone outside of the car, and

---

[1] According to Lawson, he kept the cocaine purchases separate by placing the drugs from the first transaction in the car's glove compartment, while keeping the drugs purchased from Jackson in the passenger compartment. He was therefore able to identify for law enforcement what cocaine he had obtained from Jackson.

[2] It was established at trial that Jackson's nickname was L'il Red.

Lawson then pulls the car over, exits the vehicle, and approaches a house. The recording briefly shows Jackson sitting on the porch of the house and Lawson is heard greeting him as "L'il Red." The men then have a very brief conversation that cannot be understood on the recording, but something that could be paper money can be heard making a crinkling sound. Lawson then says, "Thank you, L'il Red," and he proceeds back to his car. As he is driving away, and approximately 30 seconds after leaving Jackson, Lawson reports to the narcotics agent that he has made a purchase of cocaine from "Johnny Mae Little's grandson. They call him Red." Lawson then says he is returning to the rendezvous location to meet the narcotics agent. Approximately 30 seconds later, and almost a minute after leaving Jackson, Lawson says to himself, "the one that shot Freak Nasty in the stomach." The recording shows Lawson returning to the rendezvous location and meeting the narcotics agent, and he can be heard saying to the agent, "that's Red's" and "that's the other buy."

During deliberations, the jury asked to review that portion of the video relating to Jackson. The judge then allowed the jurors to review approximately three minutes of the recording, although it is not clear whether that portion of the video included Lawson's statement "the one that shot Freak Nasty."

4

At the hearing on Jackson's motion for a new trial, his trial counsel testified that although he listened to the entire recording prior to trial, he did not hear Lawson's remark about "the one that shot Freak Nasty." Nor did he hear that remark when he reviewed the recording with Jackson just prior to it being introduced into evidence, and Jackson did not point the remark out to him. The lawyer further stated that he did not hear the remark when the recording was played at trial for the jury and, if he had, he would have objected immediately.

Both Jackson and his grandmother also testified at the motion for new trial hearing, and each testified that they heard Lawson's remark regarding the shooting of Freak Nasty when the recording was played at trial. Jackson explained that he did not point out the statement to his lawyer, because he did not realize it was objectionable.

1. We first address Jackson's claim that his attorney's failure to object to Lawson's remark about "the one that shot Freak Nasty in the stomach" constituted ineffective assistance of counsel. To prevail on this claim, Jackson must prove both that his lawyer's performance was deficient and that he suffered prejudice as a result of this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). With respect to the deficiency prong of the *Strickland* test, Jackson must show that his attorney performed his duties at trial in an objectively

5

unreasonable way, considering all the circumstances, and in light of prevailing professional norms. Id. at 687-688 (III) (A).

We assume for purposes of this appeal that the jury had no choice but to view Lawson's statement, "the one that shot Freak Nasty in the stomach," as referring to Jackson. Based on this assumption, the statement was clearly objectionable as improper character evidence. See *Johnson v. State*, 275 Ga. 508, 510 (3) (570 SE2d 292) (2002) ("to protect an accused and to insure him of a fair and impartial trial before an unbiased jury, we have long embraced the fundamental principle that the general character of an accused is inadmissible unless the accused chooses to put his character in issue") (citation and punctuation omitted). Jackson's trial counsel, therefore, performed deficiently when he failed to object to that portion of the audio-video recording when it was played at trial. See *Ward v. State*, 304 Ga. App. 517, 527 (5) (a) (696 SE2d 471) (2010). Accordingly, we now turn to the second prong of Jackson's ineffective assistance claim.

To demonstrate that he suffered prejudice as a result of his attorney's performance, Jackson must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

6

outcome." *Strickland*, supra at 694 (III) (B). "This burden, though not impossible to carry, is a heavy one." *Arnold v. State*, 292 Ga. 268, 270 (2) (__ SE2d __) (2013), citing *Kimmelman v. Morrison*, 477 U. S. 365, 382 (II) (C) (106 SC 2574, 91 LE2d 305) (1986). We find that Jackson has failed to carry this burden.

When determining whether the unchallenged introduction of improper character evidence has prejudiced the defendant, Georgia's appellate courts consider a number of factors. These include whether the reference to the improper character evidence is isolated and brief, whether the jury's exposure was repeated or extensive, and whether the introduction of the objectionable evidence was inadvertent or whether it was deliberately elicited by the State. See *Toomer v. State*, 292 Ga. 49, 58-59 (4) (734 SE2d 333) (2012) (no prejudice where the improper character evidence consisted of "passing references in . . . police interviews to [defendant's] probation status, his prior arrest for fighting, and his burglary conviction [and these references] were buried in four long interview videotapes that were played during the testimony of three different witnesses"); *Armour v. State*, 290 Ga. 553, 556 (2) (c) (722 SE2d 751) (2012) (the "fleeting introduction" of evidence that defendant had been previously arrested on a "gun charge" and for giving false information to a police officer did not create "a reasonable probability that the outcome of the trial would have been different, because

7

the charges were never mentioned again during the trial"). Compare *Merritt v. State*, 255 Ga. 459, 460 (2) (339 SE2d 594) (1986) ("We strongly disapprove the gratuitous introduction of irrelevant and prejudicial [character evidence], particularly where, as here, the prejudicial testimony is elicited from a witness by the prosecutor.")

This Court has found prejudice where the case comes down to a question of whether the jury believes the version of events as told by the defendant or as told by a witness for the State, and the improper character evidence reflects directly on the defendant's credibility. For example, in *Emilio v. State*, 263 Ga. App. 604 (588 SE2d 797) (2003), the State's chief witness had been found in possession of the evidence of drug trafficking but had negotiated a plea based on her assertion that the drugs belonged to the defendant. The defendant's case at trial was based on his assertion that the drugs and cash belonged to the witness. Under these circumstances, we found that the defendant was prejudiced by trial counsel's introduction of improper character evidence asserting "that [defendant] was wanted in five states." Id. at 605 (1).

We have also found prejudice where the defendant is being tried for a violent crime and the improper character evidence tends to show the defendant's propensity to violence. Thus, in *Ward v. State*, supra, the defendant had been convicted of multiple counts of armed robbery, aggravated assault, false imprisonment, and

8

possession of a firearm during the commission of a felony, and we found that he was prejudiced by his lawyer's failure to object to testimony that he "was a drug trafficker who always carried a gun, that he was a dangerous man, [and] that he was the shooter in the similar transaction." Id. at 529 (5) (b). See also *Merritt*, supra, 255 Ga. at 460 (2) (defendant in murder trial prejudiced by admission of testimony that he had threatened his grandfather with a Molotov cocktail because "he just wanted to see a man burn"); *Pelowski v. State*, 306 Ga. App. 41, 44 (1) (701 SE2d 529) (2010) (where defendant was charged with aggravated assault, he was prejudiced by introduction of evidence showing he had previously been convicted of that same offense). Similarly, we also consider whether the improper character evidence can be considered "inherently prejudicial," given the circumstances of a particular case. See *Kalb v. State*, 276 Ga. App. 394, 397 (2) (623 SE2d 230) (2005) (in a trial for DUI, open container, and other traffic violations, introduction of defendant's entire driving record, which showed 22 separate traffic offenses and which served no legitimate evidentiary purpose, resulted in prejudice to defendant).

Finally, we analyze whether, considering the foregoing factors and in light of the evidence presented at trial, there was a possibility that the jury's exposure to the improper character evidence contributed to the guilty verdict. See *Kitchens v. State*,

9

289 Ga. 242, 244 (2) (b) (710 SE2d 551) (2011) (defendant on trial for murder was not prejudiced by counsel's failure to object to testimony regarding defendant's affiliation with a gang, where there was "overwhelming evidence of appellant's guilt," including the testimony of several eyewitnesses) (citation omitted); *Pilkington v. State*, 298 Ga. App. 317, 320 (1) (c) (680 SE2d 164) (2009) (given the overwhelming evidence of defendant's guilt, he could not show a reasonable probability that trial counsel's failure to object to improper character evidence contributed to the guilty verdict). Compare *Whitaker v. State*, 276 Ga. App. 226, 229 (1) (622 SE2d 916) (2005) (defendant showed a reasonable probability that outcome of trial would have been different but for counsel's failure to object to improper character evidence where "[t]he only direct evidence against [defendant] was the word of two individuals with previous criminal convictions who had a motive to point the finger at [defendant], particularly since they also faced criminal charges for the same events"); *Emilio*, supra, 263 Ga. App. at 605 (1).

Examining the relevant factors together with the evidence presented against Jackson at trial, we find that he has failed to prove a reasonable probability that Lawson's remark about the shooting of "Freak Nasty" contributed to the guilty verdict. Although the remark could be interpreted as referring to Jackson, it was not

10

an affirmative statement that Jackson was the one that shot Freak Nasty. Moreover, the State did not elicit this statement and the evidence indicates that it was likely heard by the jury only once, and no more than twice.[3] Additionally, the remark was a brief, single comment made towards the end of an approximately 30 minute recording and almost a full minute after Lawson had completed the transaction and left Jackson; indeed, it was so "buried" in the recording that trial counsel was unaware of it until he was contacted by Jackson's appellate lawyer. Furthermore, this case was not a "swearing contest" between a State's witness and Jackson; the remark, therefore, had no impact on the issue of credibility. And while the remark arguably indicated Jackson had a propensity to violence, he was not on trial for a violent crime.

Most importantly, the record shows that the evidence of Jackson's guilt was substantial. It consisted not only of the testimony of Lawson, but also of the recording

---

[3] Despite Jackson's assertion to the contrary, there is no evidence that the remark was played repeatedly for the jury. Rather, the recording was played in its entirety for the jury only once. There is also a possibility that the remark may have been heard by the jurors a second time, when they asked to review that part of the video relating to Jackson. Jackson's lawyer testified at the hearing below that his recollection was that the jury began viewing the video at the point where Lawson first saw and spoke to Jackson. The jury then viewed approximately three minutes of the recording. That portion may or may not have included the remark in question, given that Lawson made that remark approximately three minutes after he first approached Jackson.

that Lawson made. And although that recording "does not mention cocaine or show an actual exchange between [Jackson] and the informant, . . . it does clearly show [Jackson's] face and it supports [Lawson's] testimony regarding" Lawson's actions on the day in question and his transaction with Jackson. *Culpepper v. State*, 302 Ga. App. 370, 371 (690 SE2d 864) (2010). Thus, given the testimony of the witnesses, including Lawson, as well as the recording of the transaction, Jackson "has not shown that his trial would have had a different result if his counsel had objected to" Lawson's statement regarding the shooting of Freak Nasty. Id. at 373 (1) (b) (on appeal from his conviction for sale and possession of cocaine, defendant could not show he was prejudiced by trial counsel's failure to object to informant's testimony that he had previously purchased crack cocaine from defendant, given the evidence against him, which included the testimony of the officer running the undercover operation, the informant who purchased the drugs, and the videotape that corroborated the informant's testimony). See also *Williams v. State*, 312 Ga. App. 693, 696 (3) (719 SE2d 501) (2011) (in light of the testimony of defendant's "accomplices, the confidential informant, and the officer who participated in the sale, in conjunction with the audio and video tapes" that corroborated this testimony, defendant appealing his conviction for trafficking in cocaine could not show prejudice resulting from

12

counsel's failure to object to testimony concerning defendant's previous involvement with drugs).

2. Jackson also contends that the court's failure to instruct the jury, sua sponte, to disregard Lawson's remark regarding the shooting constitutes reversible error. We disagree.

As Jackson concedes in his brief, trial counsel's failure to object to the introduction of evidence at trial usually means that a defendant has waived any claimed error relating to the admission of that evidence. See *Patten v. State*, 275 Ga. App. 574, 575 (1) (621 SE2d 550) (2005). He nevertheless argues that we should consider the trial court's failure to sua sponte instruct the jury to disregard Lawson's remark under the plain error rule. "A plain error is one that is so clearly erroneous that it creates a likelihood of a grave miscarriage of justice or seriously affects the fairness, integrity, or public reputation of the judicial proceeding." (Footnote omitted.) Id. And to demonstrate plain error, an appellant must show that he suffered harm as a result of the error. See *Anderson v. State*, 297 Ga. App. 733, 735-736 (1) (678 SE2d 498) (2009) ("The 'plain error' rule does not establish a different standard for determining the reversibility of an error, but instead allows a criminal defendant to avoid the penalty of waiver, by permitting appellate review of assertions of error raised for the

first time on appeal where the asserted error affects substantive rights.") (Citations omitted.) As discussed in Division 1, however, Jackson cannot show that the introduction of Lawson's remark contributed to the jury's guilty verdict. Accordingly, he cannot prove plain error. Id. See also *Wagner v. State*, 311 Ga. App. 589, 594, n. 3 (716 SE2d 633) (2011) ("Unlike a harmless-error analysis, where the appellee bears the burden of showing that an error did not likely affect the outcome below, a plain-error analysis requires the appellant to make an affirmative showing that the error probably did affect the outcome below.") (citing *United States v. Olano*, 507 U. S. 725, 734 (II) (A) (113 SC 1770, 123 LE2d 508) (1993)) (Blackburn, P. J., concurring specially).

For the reasons set forth above, we affirm the order of the court below denying Jackson's motion for a new trial.

*Judgment affirmed. Miller, P. J., and Ray, J., concur.*