**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 3, 2016**

# In the Court of Appeals of Georgia

A16A1122. TAYLOR v. THE STATE.

PHIPPS, Presiding Judge.

A jury found Melvin Taylor guilty of two counts each of child molestation,[1] aggravated child molestation,[2] and statutory rape,[3] one count of rape, and one count of influencing a witness.[4] Taylor appeals his convictions, arguing that the trial court erred in admitting certain evidence. For the reasons set forth below, we disagree and affirm.

---

[1] OCGA § 16-6-4 (a).

[2] OCGA § 16-6-4 (c).

[3] OCGA § 16-6-3 (a).

[4] OCGA § 16-10-93.

Viewed in a light most favorable to the jury's verdict,[5] the evidence shows that in March 2010, T. L., who lived primarily with her grandmother, was visiting her mother for the weekend at the home her mother shared with Taylor, T. L.'s younger sister and brother, and Taylor's two young children. One night, after everyone else had gone to bed, Taylor came into the living room where T. L., then fourteen years old, was lying on the couch. Taylor grabbed T. L.'s breasts, pulled down her pants and underwear, and performed oral sex on her. Taylor then had vaginal intercourse with T. L.

The following night, Taylor grabbed T. L.'s arm while she was watching television in the living room with her eleven-year-old sister, Q. J. Taylor forced T. L. into the den and directed her to perform oral sex on him. Taylor then returned to the living room where he grabbed Q. J. and pushed her into the den. Taylor pushed Q. J. onto the sofa, pulled down her pants and underwear, and "stuck his penis in [her] vagina."

T. L. returned home and disclosed the assault to her aunt and grandmother, who called the police. After Q. J. was removed from her mother's home, her mother and Taylor telephoned her together. Taylor told Q. J. that, if she told what happened, he

---

[5] See *Alvarado v. State*, 257 Ga. App. 746, 747 (1) (572 SE2d 18) (2002).

could get fifteen years in prison, Q. J.'s mother could get in trouble, and that Q. J. could "go to juvenile."

At trial, both T. L. and Q. J. testified as to what Taylor had done to them. T. L. also testified that she had seen Taylor grab Q. J. and push her into the den, closing the door. T. L. described that she had heard "squeaking" and "slapping" noises coming from the den. And when Q. J. came out of the den ten or fifteen minutes later, T. L. had observed that she was walking "funny."

The state also presented DNA evidence from a rape kit performed on T. L. the day after her outcry. A pediatric nurse practitioner, who was qualified as an expert in child sexual assault examinations, testified that she had performed the rape kit on T. L. The rape kit, as well as buccal swabs and hair from Taylor, were sent to the Georgia Bureau of Investigation ("GBI"). A forensic biologist with the GBI testified that she had concluded that the DNA obtained from T. L.'s vaginal and cervical swabs matched that of Taylor.

1. Taylor argues that the trial court erred by allowing testimony about an allegedly similar transaction because there were "no similarities" between the testimony and the acts alleged by T. L. and Q. J.

We review a trial court's decision to admit similar transaction evidence for abuse of discretion.[6] Moreover, "when considering the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate crime and the crime in question."[7] "As a general rule, the sexual molestation of young children or teenagers, *regardless of the type of act*, is sufficiently similar to be admissible as similar transaction evidence."[8]

After holding a preliminary hearing, the court allowed the testimony of J. K. as a similar transaction to show course of conduct, bent of mind, and lustful disposition.[9] J. K., Taylor's sister, testified at trial regarding an incident that occurred when she was nine or ten years old and Taylor (who was four or five years older than

---

[6] *Pareja v. State*, 286 Ga. 117, 121 (686 SE2d 232) (2009).

[7] Id. (citation and punctuation omitted).

[8] *Woods v. State*, 304 Ga. App. 403, 406 (2) (696 SE2d 411) (2010) (citation and punctuation omitted; emphasis in original).

[9] Taylor was tried in 2012, prior to the effective date of Georgia's new Evidence Code. See Ga. L. 2011, p. 99, 100, § 1 (adopting the new Code as of January 1, 2013). "Under the law then in effect, 'course of conduct' was considered a proper purpose for admitting similar transaction evidence. . . . Under the new Evidence Code, similar transaction evidence may be admissible for purposes including proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Redding v. State*, 297 Ga. 845, 848 n. 2 (778 SE2d 774) (2015) (citations and punctuation omitted).

she) was a teenager. J. K., who was 26 years old at the time of trial, recalled playing "mommies and daddies" with Taylor and a group of cousins, all of whom were younger than Taylor. J. K. explained that the game involved "[s]exual contact," like "touching and feeling," kissing on the mouth, and touching private parts.

While playing "mommies and daddies," Taylor only touched J. K.'s arm. At one point, he asked if J. K. would tell anyone if he kissed her on the mouth. She replied that she would tell her mother. On a second occasion, Taylor asked J. K. to play "mommies and daddies," but she refused, having concluded that it was "not appropriate" to play such a game with her brother.

We find no abuse of discretion in the admission of J. K.'s testimony as it tends to show Taylor's lustful disposition toward young girls and "inappropriate or questionable behavior," even though the prior conduct was not illegal and there was thus no prior police report and investigation.[10] Moreover, the incident, which occurred about 15 years prior to the crimes at issue, was not too remote in time to the charged crimes.[11] "Where, as here, the similar transaction evidence is otherwise

[10] See *Leaptrot v. State*, 272 Ga. App. 587, 597 (3) (a) (612 SE2d 887) (2005). See also *Bibb v. State*, 315 Ga. App. 49, 51 (2) (b) (726 SE2d 534) (2012).

[11] See *Leaptrot*, supra at 599 (3) (c) (noting that courts have upheld admission of evidence where the similar transaction occurred 11-19 years prior to the crime at

admissible, a time lapse such as this one goes to the weight and credibility of the evidence and does not demand its exclusion."[12]

2. Taylor contends that the trial court erred by admitting evidence that he was hiding under a bed during a prior arrest and that he was wearing a dress when taken into custody for that crime.

"We review a trial court's evidentiary rulings under an abuse of discretion standard of review. . . . [H]owever, we accept a trial court's factual findings unless they are clearly erroneous."[13]

Prior to trial, Taylor filed a motion in limine to exclude evidence regarding his criminal history and arrests. Specifically, Taylor sought to exclude evidence that, when he was arrested on a prior charge, he was found hiding under a bed. After his arrest, Taylor made a statement to law enforcement, which referenced a possible obstruction charge. Taylor argued that this evidence was not admissible as a similar transaction because he was not charged with obstruction in the current case. The trial

---

issue).

[12] Id. (citation and punctuation omitted).

[13] *Reed v. State*, 291 Ga. 10, 14 (3) (727 SE2d 112) (2012) (citations and punctuation omitted).

court ordered the state to redact from Taylor's statement any reference to a possible obstruction charge.

At trial, the state introduced as a similar transaction evidence that Taylor had molested the young child of his former girlfriend. The acts committed on this child had led to Taylor's arrest.

The police officer who had arrested Taylor testified that she found Taylor "under the bed" and that she had to tell him to come out several times before he did so.

A child protective services worker also testified that she had investigated the case and created a safety plan for the child. The worker was at the police station when Taylor was brought in to the station. She described her observations regarding Taylor's custodial interview, testifying that Taylor had admitted that he had been hiding under the bed when officers came to the house. She added that Taylor was wearing a black dress during the interview: "I believe when they went to get him and he was under the bed he did not have a shirt on and . . . he pointed out to grab a black item on the floor or somewhere and they got that item for him to wear. . . . And it just ended up being a dress."

Assuming without deciding that Taylor's motion in limine and objection at trial preserved this issue for appeal,[14] any error in admitting testimony regarding the circumstances of Taylor's prior arrest was harmless in light of the overwhelming evidence of Taylor's guilt, including the testimony of the two victims and the DNA evidence.[15]

*Judgment affirmed. Dillard and Peterson, JJ., concur.*

---

[14] But see *Hernandez v. State*, 291 Ga. App. 562, 564 n. 2 (662 SE2d 325) (2008) ("A motion in limine preserves an issue for appeal without a contemporaneous objection at trial, but this rule cannot be invoked to preserve a different, if perhaps related, error.") (citation and punctuation omitted).

[15] See *Lowe v. State*, 317 Ga. App. 442, 444 (731 SE2d 127) (2012) ("The erroneous admission of evidence is harmless where it is highly probable that the error did not contribute to the verdict in light of the otherwise overwhelming evidence of guilt.") (citation and punctuation omitted).