**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 19, 2018**

# In the Court of Appeals of Georgia

A18A0157. GARNER v. THE STATE.

DILLARD, Chief Judge.

Joseph Garner appeals his convictions for first-degree cruelty to children, rape, statutory rape, aggravated sodomy, and several other sex offenses. Specifically, Garner argues that (1) the evidence was insufficient to support his convictions for rape and statutory rape, (2) his trial counsel was ineffective for failing to ensure that a video played for the jury was redacted such that his character would not be an issue at trial, and (3) the trial court abused its discretion by denying his motion for a mistrial after a law-enforcement officer testified that another officer "believed" one of the victim's allegations. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that Garner and Crystal Wilson, the mother of the two minor victims (A. A. and T. A.), met sometime in late March or early April 2011. The couple began dating, and in June of that year, they moved in together, along with Wilson's children.[2] Approximately two years later, on May 3, 2013, Garner and Wilson were married. But less than two months after the wedding, on June 28, 2013, Wilson was arrested for perjury and taken into custody. Ultimately, Wilson was convicted of the charged offense, served a two-year prison term, and was released in February 2015.

During Wilson's incarceration, A. A. and T. A. lived alone with Garner, and at some point, he began sexually abusing A. A. The first time it happened, Garner and the children were at his mother's home. T. A. left to take out the trash, and Garner told A. A. to come into a room with him. Garner then ordered A. A. to "pull down [her] clothes[,]" and he put his finger inside her vagina. Garner told A. A. that her mother had given him permission to do it. A few months later, Garner sexually assaulted A. A. a second time, and despite A. A. pleading with him to stop, he

---

[1] *See, e.g.*, *Morris v. State*, 340 Ga. App. 295, 295 (797 SE2d 207) (2017).

[2] In addition to A. A. and T. A., Wilson's oldest child, B. A., moved in with the couple in June 2011, but she left a few months later.

penetrated her vagina with his penis.[3] Thereafter, sexual "stuff like that" happened with Garner and A. A. "most every day." Specifically, Garner would place his penis in A. A.'s mouth and vagina, and put his finger in her vagina as well. Garner did these things to her "all the time[,]" and when she told him that she did not want him to do it anymore, she and T. A. would both "get in trouble for it."[4] On some occasions, Garner also used sex toys with A. A., including a "long blue thing" and a "vibrating thing."

If A. A. refused to perform the sexual acts demanded by Garner, he "would get mad and . . . want to hurt [A. A. and T. A.] for it." On one occasion, Garner choked A. A., pushed her up against a wall, and crammed a shirt in her mouth so she could not breath. Garner would also tie up T. A. with three belts and then beat him with

---

[3] During her testimony, A. A. sometimes referred to Garner's penis as his "squishy[,]" but confirmed that she was referring to his penis.

[4] T. A., who was 13 years old at the time of trial, testified that Garner "whopped" him with a belt nearly every day. He further testified that sometimes Garner and A. A. went into Garner's room, locked the door, and did not come out for an hour or two. When this happened, Garner turned "the music up very loud" and told T. A. to lock himself in his bedroom or in the bathroom. And while T. A. did not know exactly what was happening between Garner and A. A., he thought it was "weird[,]" and once, he heard A. A. asking for her bra, which he found suspicious. Garner told T. A. that if he ever told anyone that he thought Garner was hurting his sister, he "was going to wish that [he] had never said that."

another one. As a result of Garner's continuous physical abuse, A. A. and T. A. had bruises all over their arms and their bodies were red and swollen. Garner also inflicted emotional abuse on A. A. even when he was not sexually abusing her. For example, after A. A. told Garner that she wanted to kill herself because of the sexual abuse, Garner handed A. A. a kitchen knife and encouraged her to do it. On a separate occasion, Garner made A. A. "put on tights like a stripper[,]" go outside to the road, and ordered her to wait there to see if someone would pick her up. A. A. was left there, dressed like a stripper, for almost an hour. And while A. A. desperately wanted to report this sexual and emotional abuse to her mother, Garner read all of the letters that she and T. A. wrote to their mother in prison before sending them.

In June 2014, A. A. and T. A. went to visit their aunt and cousins for two weeks, as they did every summer. During the visit, A. A. disclosed the ongoing sexual and emotional abuse to her aunt. Specifically, A. A. reported that Garner had been "messing with [her] . . . in a sexual way[,]" and she reported some of the abuse detailed *supra*. And after A. A. confirmed that she would be willing to repeat her allegations to law enforcement, her aunt took her to the Newton County's Sheriff's Office to do so. Then, on June 26, 2014, A. A.'s aunt took her to a child-advocacy center for a forensic interview, during which A. A. essentially repeated her outcry.

4

Thereafter, Garner was charged, via indictment, with rape, statutory rape, aggravated sexual battery (3 counts), aggravated sodomy, aggravated child molestation (2 counts), incest (2 counts), child molestation (2 counts), family-violence aggravated assault, and first-degree cruelty to children (4 counts). And following a jury trial, Garner was convicted of all charged offenses, except for one of the four first-degree cruelty-to-children counts. Garner then filed a motion for a new trial, which was denied following a hearing. This appeal follows.

1. Garner first argues that the evidence was insufficient to support his convictions for rape and statutory rape. We disagree.

When a criminal conviction is appealed, the evidence must be viewed "in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence."[5] And, of course, in evaluating the sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[6] We will, then, uphold a jury's verdict so long as there

---

[5] *Hartzler v. State*, 332 Ga. App. 674, 676 (1) (774 SE2d 738) (2015) (punctuation omitted).

[6] *Hartzler*, 332 Ga. App. at 676 (1) (punctuation omitted); *see Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[7] Bearing these guiding principles in mind, we turn now to Garner's specific challenge to the sufficiency of the evidence to support his convictions for rape and statutory rape.

OCGA § 16-6-1 (a) (1) provides, in relevant part, that "[a] person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will." The statute further defines "carnal knowledge" in rape as "when there is any penetration of the female sex organ by the male sex organ."[8] And Count 1 of the indictment charged Garner with rape in that, between June 1, 2013, and May 29, 2014, he "did have carnal knowledge of [A. A.], a female, forcibly and against her will . . . ." Additionally, under OCGA § 16-6-3 (a), "[a] person commits the offense of statutory rape when he or she engages in sexual intercourse with any person under the age of 16 years . . ., provided that no conviction shall be had for this offense on the unsupported testimony of the victim." In this regard, Count 2 of the indictment charged Garner with statutory rape in that, between June 1, 2013, and May 29, 2014,

---

[7] *Hartzler*, 332 Ga. App. at 676 (1) (punctuation omitted).

[8] OCGA § 16-6-1.

6

Garner "did engage in sexual intercourse with [A. A.], a person under 16 years of age

. . . ."

As to both his rape and statutory-rape convictions, Garner does not contend A. A.'s testimony that he repeatedly forced her to engage in sexual acts with him was insufficient to establish all of the essential elements of those offenses. Instead, with sparse citations to the record and without citing any legal authority other than the general standard applicable to a review of the sufficiency of the evidence,[9] he appears to challenge only A. A.'s credibility as a witness and the lack of evidence to corroborate her testimony. Specifically, he summarily contends that it is "more than highly probable that [A. A.] fabricated the story against [him], simply inserting some of the acts and details" that she had seen in pornographic videos. Garner also

---

[9] *See Gunn v. State*, 342 Ga. App. 615, 623-24 (3) (804 SE2d 118) (2017) (holding that the appellant abandoned two claims of error when, beyond one or two case citations to "the most basic legal authority" as to the purpose of the legal rule at issue and the general standard applicable to claims of ineffective assistance of counsel, the appellant provided no legal authority to support his *specific* contentions as to how and why the trial court committed error, and noting that "mere conclusory statements are not the type of meaningful argument contemplated by our rules" (punctuation omitted)); *Dimauro v. State*, 341 Ga. App. 710, 727-28 (6) (801 SE2d 558) (2017) (holding that the appellant abandoned arguments by failing to cite to the record or any relevant legal authority to support them and noting that the burden is on the party alleging error to show it affirmatively in the record).

maintains that there was no physical or forensic evidence to corroborate A. A.'s story. These arguments are unavailing.

It is well established that "[r]esolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court."[10] Garner's contention, then, that it is "highly probable" A. A. fabricated her testimony is of no consequence. The jury evidently disagreed, which it was entitled to do.[11] Furthermore, as to Garner's rape conviction, corroborating evidence is not required, and A. A.'s testimony alone is sufficient to support his conviction.[12] And while a

---

[10] *Odett v. State*, 273 Ga. 353, 353-54 (1) (541 SE2d 29) (2001); *accord Jones v. State*, 326 Ga. App. 151, 153 (756 SE2d 267) (2014).

[11] *See Taylor v. State*, 331 Ga. App. 577, 581 (2) (a) (771 SE2d 224) (2015) ("[I]t is the jury's duty as factfinder to weigh the evidence presented at trial and to determine the credibility of the witnesses. It is not obligated to believe any witness, and it may accept or reject any portion of a witness's testimony." (punctuation omitted)); *Luke v. State*, 324 Ga. App. 531, 533 (2) (751 SE2d 180) (2013) (same).

[12] *See Glaze v. State,* 317 Ga. App. 679, 681 (1) (732 SE2d 771) (2012) ("[T]he testimony of a single witness is generally sufficient to establish a fact[,] . . . [a]nd the General Assembly long ago removed the corroboration requirement from the rape statute." (punctuation and footnote omitted)); *Lowe v. State*, 259 Ga. App. 674, 674-75 (1) (578 SE2d 284) (2003) (holding that the victim's testimony alone was sufficient to support convictions for rape, aggravated assault, and burglary); *Hutchison v. State*, 239 Ga. App. 664, 664 (522 SE2d 56) (1999) ("The testimony of a single witness is generally sufficient to establish a fact[,] . . . [a]nd corroboration is no longer necessary to establish rape." (citation and punctuation omitted)).

victim's testimony must be corroborated to support a conviction for statutory rape,[13] Garner is wrong to claim that A. A.'s testimony was insufficiently corroborated. Significantly, the quantum of corroboration needed in a statutory-rape case is "not that which is in itself sufficient to convict the accused, but only that amount of independent evidence which tends to prove that the incident occurred as alleged."[14] Indeed, slight circumstances "may be sufficient corroboration, and ultimately the question of corroboration is one for the jury."[15] Lastly, physical findings corroborating the victim's testimony are "not necessary to sustain a conviction of statutory rape."[16]

---

[13] *See* OCGA § 16-6-3 (a) ("A person commits the offense of statutory rape when he or she engages in sexual intercourse with any person under the age of 16 years . . ., provided that no conviction shall be had for this offense on *the unsupported testimony of the victim*." (emphasis supplied)); *Byars v. State*, 198 Ga. App. 793, 793 (1) (403 SE2d 82) (1991) (explaining that "only the fact of the commission of the offense of statutory rape must be corroborated by other evidence" (punctuation omitted)).

[14] *Hill v. State*, 331 Ga. App. 280, 282 (1) (a) (769 SE2d 179) (2015) (punctuation omitted); *accord Byars*, 198 Ga. App. at 793 (1).

[15] *Hill*, 331 Ga. App. at 282 (1) (a) (punctuation omitted); *accord Byars*, 198 Ga. App. at 793 (1).

[16] *Hill*, 331 Ga. App. at 282 (1) (a) (punctuation omitted).

Here, T. A.'s testimony corroborated A. A.'s allegations of sexual abuse. Specifically, T. A. testified that Garner periodically locked him in a different room while Garner and A. A. were alone with the music turned up, and on one occasion, he heard A. A. ask Garner for her bra, suggesting that she had been undressed. Perhaps most significantly, forensic testing revealed both A. A. and Garner's DNA on one of the sex toys that A. A. alleged Garner used while abusing her. And while most of the DNA on the toy matched A. A. with a reasonable degree of scientific certainty, a partial profile of DNA taken from the toy also matched Garner.[17] Furthermore, a victim's prior consistent statements, in the form of her outcry to others as testified to by them, "may constitute sufficient corroboration in a case of statutory rape[.]"[18] And at trial, A. A.'s aunt testified as to A. A.'s initial disclosure of the

_____

[17] The forensic biologist testified that, while she could determine with a reasonable degree of scientific certainty that A. A.'s DNA was on the toy, she could only provide statistics as to her finding that a partial profile obtained from the toy matched Garner. Specifically, she testified that 1 in 80 African Americans would match the profile and 1 in 300 Caucasian Americans would match it, and based on these statistics, she considered Garner to be a partial match.

[18] *Salazar v. State*, 245 Ga. App. 878, 880 (2) (539 S.E.2d 231) (2000); *see Turner v. State*, 223 Ga. App. 448, 450 (2) (477 SE2d 847) (1996) ("A child-victim's prior consistent statements, as recounted by third parties to whom such statements were made, can constitute sufficient substantive evidence of corroboration in a statutory rape case." (punctuation omitted)).

ongoing sexual abuse, including her allegation that Garner had "put[ ] his penis in [her]." Additionally, the jury viewed a videotaped forensic interview of A. A., in which she reiterated her allegations of sexual abuse. Given the foregoing, A. A.'s testimony alone was sufficient to support Garner's rape conviction,[19] and there was sufficient evidence to corroborate her testimony as to his statutory-rape conviction.[20]

2. Garner next argues his trial counsel was ineffective for failing to ensure that a portion of A. A.'s videotaped forensic interview, which made his character an issue at trial, was redacted. Again, we disagree.

In evaluating claims of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[21] "which requires [a defendant]

[19] *See supra* note 12; *Alford v. State*, 243 Ga. App. 212, 213 (1) (534 SE2d 81) (2000) (holding that a victim's testimony the defendant "put his penis into [her] vagina[,]" standing alone, was sufficient to support a rape conviction).

[20] *See Salazar*, 245 Ga. App. at 880 (2) (holding that evidence the victim told her mother, sister, and aunt the defendant raped her was sufficient evidence to support his conviction for statutory rape); *Wilson v. State*, 241 Ga. App. 426, 430-31 (2) (526 SE2d 381) (1999) (holding that there was sufficient evidence to support the defendant's conviction for statutory rape when the minor victim's testimony she was raped by the defendant was corroborated by, *inter alia*, testimony of the victim's mother and sister that she reported the rape to them after it happened).

[21] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984); *see also Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

to show that his trial counsel's performance was deficient and that the deficient performance so prejudiced [him] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[22] Additionally, there is a strong presumption that trial counsel's conduct "falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption."[23] Lastly, unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[24]

Here, prior to trial, the State informed the court that it intended to play A. A.'s videotaped forensic interview for the jury, but there were two segments the State and

[22] *Howard v. State*, 340 Ga. App. 133, 139 (3) (796 SE2d 757) (2017) (punctuation omitted); *see Ashmid*, 316 Ga. App. at 556 (3) ("With the second prong [of the *Strickland* test], the question is whether there exists a reasonable probability that, but for his counsel's errors, the jury would have had a reasonable doubt regarding appellant's guilt, that is, but for counsel's unprofessional errors, the result of the proceeding would have been different." (punctuation omitted)).

[23] *Howard*, 340 Ga. App. at 139 (3); *accord Chapman v. State*, 273 Ga. 348, 350 (2) (541 SE2d 634) (2001); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[24] *Howard*, 340 Ga. App. at 139 (3) (punctuation omitted); *accord Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014).

12

Garner agreed should be redacted. But because the State did not have software capable of redacting the video, the parties agreed that one of the attorneys would manually mute the video during those segments. The State explained to the court that the two muted segments included brief references to Garner's criminal history. Then, just prior to playing the interview at trial, the court instructed the jury that there were some portions of the interview they would not be allowed to hear and that, if the attorneys for either side muted the video for a brief period of time, they should not "pay any attention to it." Garner concedes, however, that the record is silent as to whether the video was ever actually muted by the attorneys. And, of course, the burden is "upon the party asserting error to show it affirmatively in the record."[25]

Nevertheless, assuming the video was not muted, the trial court found that there was no error in not redacting the complained-of portion of the forensic interview, and alternatively, any such error was harmless. Garner disagrees, contending that his counsel was ineffective for failing to ensure that the jury did not hear an exchange

_____

[25] *Orengo v. State*, 339 Ga. App. 117, 123 (4) (793 SE2d 466) (2016). At the motion-for-new-trial hearing, Garner testified that the complained-of portion of the video *was* played for the jury, and his trial counsel testified she did not remember whether any portion of the video was "redacted" or not.

13

between the forensic interviewer and A. A. in which she stated that her family did not

trust him. Garner quotes the exchange as follows:

Q. How come [your family] would ask you stuff like that?

A. Cause they don't really trust [Garner].

Q. Okay[,] so they would ask you if he touches you?

A. Um hum.

Q. Was there a reason why they would ask you that?

A. I don't know. I didn't ask cause I knew . . . .

Garner now argues A. A.'s responses to the interviewer constituted comments

on his character, truthfulness, and honesty, painting him as an "unsavory character."[26]

But A. A.'s brief, isolated comment regarding her belief that her family does not trust

Garner, without more, did not impermissibly place his character into evidence.

Indeed, evidence is not inadmissible simply because "it might incidentally reflect on

---

[26] *See* OCGA § 24-4-404 (providing that, absent an enumerated exception, "[e]vidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion . . . ."); *Smallwood v. State*, 334 Ga. App. 224, 225 (1) (779 SE2d 1) (2015) ("Generally, the character of the defendant should not come into evidence unless he chooses to put his character in issue and when prejudicial matter is improperly placed before the jury, a mistrial is appropriate if it is essential to the preservation of the defendant's right to a fair trial." (punctuation omitted)).

14

the defendant's character."[27] Furthermore, in determining whether unchallenged improper character evidence prejudiced a defendant, Georgia courts consider many factors, including "whether the reference to the improper character evidence is isolated and brief, whether the jury's exposure was repeated or extensive, and whether the introduction of the objectionable evidence was inadvertent or whether it was deliberately elicited by the State."[28] And this Court has held evidence that was significantly more damaging than the statements challenged in this case—such as brief, isolated references to a defendant's prior criminal history or incarceration—is not impermissible character evidence.[29] Here, it is undisputed that A. A.'s comment

---

[27] *Pitts v. State*, 260 Ga. App. 553, 564 (8) (b) (580 SE2d 618) (2003) (punctuation omitted); *accord Hawkins v. State*, 316 Ga. App. 415, 420 (3) (729 SE2d 549) (2012).

[28] *Jackson v. State*, 321 Ga. App. 607, 610 (1) (739 SE2d 86) (2013); *accord Smallwood*, 334 Ga. App. at 225-26 (1).

[29] *See, e.g. Taylor v. State*, 303 Ga. 225, 229 (3) (811 SE2d 286) (2018) ("[E]ven if the witness's testimony gives rise to the inference that the appellant had a criminal history, there is no error in denying a mistrial based upon an incidental reference to a defendant's character."); *Allen v. State*, 296 Ga. 785, 788 (4) (770 SE2d 824) (2015) ("To the extent that the detective's comment suggested a criminal act on [the defendant's] part, there was no error in denying the motion for mistrial based upon the incidental reference to [the defendant's] character."); *Cuyler v. State*, 344 Ga. App. 532, 540 (2) (811 SE2d 42) (2018) (holding that the trial court did not abuse its discretion in denying a motion for a mistrial that the defendant sought based on a single reference to his time on the "chain gang" because "a passing reference to a

15

that her family did not trust Garner was isolated and brief, the jury was not repeatedly or extensively exposed to testimony that Garner was untrustworthy, and the complained-of statement was not deliberately elicited by the State. Given these particular circumstances, any objection to A. A.'s single, isolated, and brief mention that her family did not trust Garner, without any mention of the particular conduct on his part that lost their trust, would have been meritless.[30] Suffice it to say, trial counsel is not ineffective for failing to make a meritless objection.[31]

---

defendant's previous incarceration does not necessitate a mistrial"); *Smallwood*, 334 Ga. App. at 226 (1) (holding that a mention of the defendant's criminal history on a video recording did not place his character into issue, especially when it was a "brief, single, comment" that was "likely heard by the jury only once").

[30] *See Jackson*, 321 Ga. App. at 610 (1) (holding that counsel was not ineffective for failing to object to testimony that could be interpreted as commenting on the defendant's character when the State did not elicit the statement and the comment was heard by the jury only once or no more than twice); *Harris v. State*, 191 Ga. App. 399, 399 (381 SE2d 602) (1989) (holding that a mere reference to the fact that the defendant's photograph was already in police records, without more, did not inject his character into evidence).

[31] *See Burke v. State*, 316 Ga. App. 386, 389 (1) (a) (729 SE2d 531) (2012) ("Failure to make a meritless or futile objection or motion cannot be evidence of ineffective assistance." (punctuation omitted)); *Hall v. State*, 292 Ga. App. 544, 554 (6) (c) (664 SE2d 882) (2008) (same).

3. Finally, Garner argues the trial court abused its discretion by denying his motion for a mistrial after the investigating officer testified that another investigator "believed" A. A.'s allegations. This claim is likewise without merit.

We review a trial court's denial of a motion for mistrial for an abuse of discretion.[32] And in doing so, we will reverse the trial court's ruling only if "a mistrial is essential to the preservation of the right to a fair trial."[33]

At trial, an investigator with the sheriff's department, who executed the search warrant for Garner's home, testified as to his involvement in the case. Specifically, when he was asked what he did after viewing A. A.'s forensic interview, he testified as follows: "After reviewing the forensic interview, at that point I had enough to go ahead and take out a warrant for Mr. Garner . . . . They believed that, from my understanding and the [other] investigator's summary as well, they believed [A. A.]. They believed her story, so . . . ." Garner's trial counsel immediately objected, arguing that the testimony was inappropriate. The court sustained the objection and addressed the jury, stating

---

[32] *See Nyane v. State*, 306 Ga. App. 591, 592-93 (2) (703 SE2d 53) (2010).

[33] *Brown v. State*, 260 Ga. App. 77, 81 (5) (579 SE2d 87) (2003) (punctuation omitted).

I am going to emphasize again what I told you yesterday.[34] Y'all are the fact finders. Nobody else can make that determination at any point in time and you have to make it based upon the testimony and evidence produced in this courtroom, not what anybody else says themselves of opinions [from] . . . out[side] the courtroom[.] Does everybody understand that?

The jurors responded that they understood, and when the court asked them whether they had any questions about the instruction, they gave no response.

Notwithstanding the trial court's instruction, Garner moved for a mistrial based on the investigator's testimony that law-enforcement officers believed A. A.'s allegations of abuse. Following a discussion outside the jury's presence, the trial court denied the motion, but asked if Garner wanted the court to give any additional jury instructions on the matter. Garner's counsel declined, stating that she did not

---

[34] On the previous day of trial, the person who conducted A. A.'s forensic interview testified that she was subjected to "an ongoing abuse situation." Garner's counsel objected that the testimony went to "the ultimate issue" in the case. But before allowing the witness to continue testifying, the trial court instructed the jury as follows:

Ladies and gentlemen of the jury, you are the fact finders. No one else is the fact finder. You have to make a determination, so any time a witness on the stand who did not actually themselves see something, they can't give an opinion that it happened. .

18

believe there were any jury instructions that could remedy the damage caused by the improper testimony.

Garner is indeed correct that, "generally speaking, a trial witness [cannot] give opinion testimony on ultimate matters within the jury's province."[35] And in this regard, we have held that "[i]t is erroneous for a witness, even an expert, to bolster the credibility of another witness by expressing an opinion that the witness is telling the truth."[36] Here, a law-enforcement officer impermissibly testified that other officers believed A. A. and her "story," and the trial court properly sustained Garner's objection to that testimony. Garner now argues that the officer's testimony was so prejudicial that it entitled him to a new trial. But following the improper testimony, the trial court took the immediate curative action of *sustaining* Garner's objection to the testimony and emphasizing to the jurors—for the second time—that they were the factfinders, and they must base their determinations on the evidence, not on the opinions of others. Furthermore, unlike other witnesses, a jury could reasonably

---

[35] *Wright v. State*, 327 Ga. App. 658, 662 (2) (b) (760 SE2d 661) (2014) (punctuation omitted).

[36] *Wright*, 327 Ga. App. at 661 (2) (a) (punctuation omitted); *see Buice v. State*, 239 Ga. App. 52, 55 (2) (520 SE2d 258) (1999) ("Testimony that another witness believes the victim impermissibly bolsters the credibility of the victim.").

19

assume, even without express testimony on the matter, that law-enforcement officers would only arrest a suspect if they found the witness or victim at least somewhat credible. And lastly, given the overwhelming evidence of Garner's guilt, including that both his and A. A.'s DNA were found on a sex toy recovered from their home, the improper testimony at issue was harmless.[37] Under such circumstances, the court did not abuse its discretion in denying Garner's motion for a mistrial.[38]

---

[37] *See Peoples v. State*, 295 Ga. 44, 56-58 (4) (c) (757 SE2d 646) (2014) (holding that, even though the trial court erred in admitting evidence of the defendant's involvement in a prior, independent robbery, a new trial was not required in light of the overwhelming evidence that he committed the charged offenses); *Taylor v. State*, 339 Ga. App. 321, 324-25 (793 SE2d 198) (2016) (holding, in a case involving several child sex offenses, that certain potentially improper testimony was harmless in light of the overwhelming evidence of the defendant's guilt, including the testimony of the two victims and the DNA evidence).

[38] *See Gooden v. State*, 316 Ga. App. 12, 15 (1) (728 SE2d 693) (2012) (holding that the trial court did not abuse its discretion in refusing to grant a mistrial based on improper testimony a witness believed the victim when the trial court took immediate curative action by instructing the jury that the testimony should be disregarded and reminding the jury that credibility was exclusively its province); *Head v. State*, 253 Ga. App. 757, 757 (1) (560 SE2d 536) (2002) (holding that, although a witness improperly testified she believed the victim, a mistrial was not mandated when, immediately following the testimony, the trial court gave a curative instruction to the jury that the testimony was improper and the credibility or believability of a witness was for the jury to decide); *see also English v. State*, 202 Ga. App. 751, 755 (5) (415 SE2d 659) (1992) ("[T]he grant or refusal of motions for mistrial is largely within the discretion of the trial court, and this discretion will not be interfered with unless manifestly abused; and, where the trial court immediately upon the happening of an irregularity gives cautionary instructions to the jury, this

For all these reasons, we affirm Garner's convictions.

*Judgment affirmed. Doyle, P. J., and Mercier, J., concur.*

---

court will not disturb the trial court's judgment refusing a motion for mistrial." (punctuation omitted)).